744 A.2d 1076

**Jaime RIVAS**

v.

**OXON HILL JOINT VENTURE, et al.**

**No. 6264, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Feb. 1, 2000.

James A. Sullivan, Jr. (Sullivan & Talbott, on the brief), Rockville, for appellant.

John F. Costello (Michael J. Winkelman and McCarthy & Costello, L.L.P., on the brief), Lanham, for appellees.

Argued before MOYLAN, WENNER and BYRNES, JJ.

BYRNES, Judge.

The Circuit Court for Prince George's County granted summary judgment in favor of Oxon Hill Joint Venture ("Oxon Hill") and Southern Management Corporation ("Southern"), appellees, in a slip and fall tort action brought against them by Jaime Rivas, appellant. On review, Rivas poses the following question, which we have rephrased:

> Did the circuit court err as a matter of law in ruling that the duty of care owed to him was that owed to a licensee, not that owed to an invitee?

## FACTS AND PROCEEDINGS

On the evening of February 15, 1995, Jaime Rivas, a deputy sheriff for Prince George's County, was going to an apartment in the Oxon Hill Village Apartments to serve a witness in a district court landlord-tenant case with a subpoena. Rivas parked his car on the apartment complex parking lot, near the unit in which the witness lived. He got out of his car and started to walk across a stretch of asphalt ten to fifteen feet from the sidewalk of the apartment complex. As he did so, he slipped and fell on a patch of ice, sustaining serious personal injuries.

Rivas filed a negligence action in the Circuit Court for Prince George's County against Oxon Hill, the owner of the apartment complex, and Southern, Oxon Hill's managing agent. He alleged that he had been an invitee on the premis-

es, that Oxon Hill and Southern had breached their duty to keep the premises reasonably safe, and that their breach of duty had been the proximate cause of his injuries. After Oxon Hill and Southern filed a joint answer denying liability and raising certain affirmative defenses, discovery ensued.

Upon the completion of discovery, Oxon Hill and Southern filed a joint motion for summary judgment. They argued that, as a law enforcement officer, Rivas had assumed the risk of his injury as a matter of law, under the common law Fireman's Rule, and that his claim thus was barred as a matter of public policy. They also argued that Rivas had been a bare licensee on the premises, that he therefore had been owed the limited duty to refrain from willful injury or entrapment, and that the undisputed facts could not support a finding that they had breached such a duty. Rivas responded that the Fireman's Rule was inapplicable, that his status on the property was that of an invitee, and that the evidence adduced during discovery was sufficient to create a jury question with respect to negligence.

The lower court held a hearing on the motion for summary judgment and, at the conclusion of argument of counsel, granted it. The court explained:

In this case, we have a plaintiff, Jaime Rivas, a deputy sheriff, who while attempting to serve a civil court summons slipped and fell on ice that accumulated on the driveway of the parking lot of the defendant' (sic) property, Oxon Hill Village Apartments . . . .

The issue before the court is whether the sheriff is entitled to bring this action as either a licensee or an invitee. If the sheriff is considered an invitee the standards for the landlord are stricter than if the sheriff was a mere licensee.

The Court has reviewed the case of *Flood v. Attsgood Realty Company,* [92 Md.App. 520, 608 A.2d 1297], a 1992 case, and indeed it has been cited several times this morning in oral argument. In that case a police officer fell through a floor of a premises while investigating a crime.

The [C]ourt said he was a licensee and the owner was not liable for failing to warn him of any hidden dangers in his house that he didn't know about.

And in that case the police officer was, in the words of the Court of Special Appeals, clearly within the performance of his duties when he was injured. The only reason the appellant, the police officer in that case, was on the premises was to investigate possible drug activity there and to search for a suspect. And the Court said because of that there was no legally cognizable factual disputes for any jury to determine the liability of the owner of the premises.

Similarly, in this case we have a sheriff who was performing his duties. Namely, serving civil summonses. While in the performance of that duty he was injured. The Court finds that he was a licensee, that the apartment owner is not responsible for his injury and cannot be held responsible for his injury because he was a licensee and owed him no other duty other than to willfully refrain from harming him or not correcting a danger that he knew would have harmed him. There being no evidence of that, the Court will grant summary judgment . . .

Rivas then filed a timely appeal to this Court.

### STANDARD OF REVIEW

In ruling on a motion for summary judgment under Rule 2–501, the trial court first must determine whether there is a genuine dispute of material fact. If no such dispute exists, it next must determine whether the moving party is entitled to judgment as a matter of law. *Beatty v. Trailmaster Products, Inc.,* 330 Md. 726, 737–38, 625 A.2d 1005 (1993); *Bagwell v. Peninsula Regional Med. Ctr.,* 106 Md.App. 470, 488, 665 A.2d 297 (1995), *cert. denied,* 341 Md. 172, 669 A.2d 1360 (1996). In reviewing a trial court's grant of a motion for summary judgment, we engage in much the same analysis. We first determine whether the trial court correctly determined that there was no dispute of material fact. If the trial court properly did so, we then determine whether its legal

ruling was correct. *Lynx, Inc. v. Ordnance Prods., Inc.,* 273 Md. 1, 8, 327 A.2d 502 (1974).

In this case, the parties agreed that there was no genuine dispute with respect to some material facts; they assumed, for the sake of argument, that other disputes of material facts would be resolved in favor of Rivas (i.e., that he would be able to present evidence of ordinary negligence on the part of Oxon Hill and Southern). Rivas did not contend below that there were facts from which a reasonable jury could find that Oxon Hill and Southern had engaged in conduct amounting to a breach of the duty of care owed to a bare licensee (nor has he taken that position before this Court.) Thus, the parties agreed (as they do now), and the trial court implicitly found, that there was no genuine dispute of material fact, and that the outcome of the summary judgment motion depended only upon the resolution of a question of law.

## DISCUSSION

The legal question presented by this case can be broken down into two sub-issues: 1) Whether the "Fireman's Rule" precluded Rivas from recovering in tort; and if not, 2) whether Rivas was owed a duty of ordinary care or a duty only to refrain from willful and wanton misconduct or entrapment.

Maryland has long recognized the common law "Fireman's Rule," which in some circumstances operates to preclude firefighters and police officers from tort recovery for injuries sustained in the course of their employment.[1] Until 1987, when the Court of Appeals decided *Flowers v. Rock Creek Terrace,* 308 Md. 432, 520 A.2d 361 (1987), the Fireman's Rule had been explained in terms of the firefighter or policeman being a bare licensee on the premises to whom was owed the limited duty to "abstain from willful or wanton misconduct or entrapment ... [which] encompasses a duty to

---

**1.** Although called the "Fireman's Rule," the doctrine applies to firefighters and police officers. *Flowers v. Sting Security, Inc.,* 62 Md.App. 116, 124, n. 1, 488 A.2d 523 (1985), *aff'd sub nom. Flowers v. Rock Creek Terrace, supra.*

warn of hidden dangers, where there was knowledge of such danger and an opportunity to warn." *Flowers,* 308 Md. at 443, 520 A.2d 361. In *Flowers,* the Court of Appeals held that the Fireman's Rule is best explained by public policy, and not by application of the law of premises liability. The Court took a causation oriented approach to the Fireman's Rule, focusing upon the roles of fire fighters and police officers in society. It explained:

> [I]t is the nature of the firefighting occupation that limits a fireman's ability to recover in tort for work-related injuries. Instead of continuing to use a rationale based on the law of premises liability, we hold that, as a matter of public policy, firemen and police officers generally cannot recover for injuries attributable to the negligence that requires their assistance. This public policy is based on a relationship between firemen and policemen and the public that calls on these safety officers specifically to confront certain hazards on behalf of the public. A fireman or police officer may not recover if injured by the negligently created risk that was the very reason for his presence on the scene in his occupational capacity. Someone who negligently creates the need for a public safety officer will not be liable to a fireman or policeman for injuries caused by this negligence.

308 Md. at 447–48, 520 A.2d 361.

More recently, in *Tucker v. Shoemake,* 354 Md. 413, 731 A.2d 884 (1999), the Court of Appeals applied the public policy analysis adopted in *Flowers* to hold that the Fireman's Rule did not preclude tort recovery by a police officer who was injured when he fell into a manhole as he was walking through the common area of a trailer park on the way to responding to a domestic dispute call from one of the trailer park residents. The Court explained that because the police officer's injuries had not been caused by the risk that had occasioned his presence at the trailer park, the Fireman's Rule was inapplicable. *Tucker,* 354 Md. at 419–20, 731 A.2d 884.

In the case *sub judice,* as in *Tucker,* the Fireman's Rule did not apply. To be sure, as a deputy sheriff for Prince

George's County, Rivas was a law enforcement officer, *see* Md.Code (1957, 1996 Repl.Vol., 1998 Cum.Supp.), Art. 27 § 594B, and his duties as such required him to confront certain risks on behalf of the public. Under the Fireman's Rule, he was deemed to have accepted the risks inherent in those duties by accepting the position of deputy sheriff and the compensation of his office. The purpose for Rivas's visit to the Oxon Hill Apartments was to perform the duty of serving a subpoena. The negligence that allegedly caused his injury, however, was unrelated to the situation that required his services. Rivas was injured on account of an allegedly defective condition of the common area parking lot of the apartment complex, across which he walked on his approach to the apartment unit in which he intended to serve the subpoena. He was not in the process of serving the subpoena when he was injured and his injuries were not brought about by the activity of subpoena serving. Because Rivas's injuries did not arise out of the very occasion for his employment, i.e., the serving of the subpoena, the Fireman's Rule was inapplicable.

The second sub-issue in this case, which was not discussed by the Court in *Tucker,* concerns the standard of care that was owed by Oxon Hill and Southern to Rivas, given the inapplicability of the Fireman's Rule. In Maryland, it is well-established premises liability law that the duty of care that is owed by the owner of property to one who enters on the property depends upon the entrant's legal status. *Baltimore Gas & Elec. v. Lane,* 338 Md. 34, 44, 656 A.2d 307 (1995)("[A] possessor of property owes a certain duty to a person who comes into contact with the property. The extent of this duty depends upon the person's status while on the property."). Ordinarily, one entering onto the property of another will occupy the status of invitee, licensee by invitation, bare licensee, or trespasser. *Baltimore Gas & Elec. v. Flippo,* 348 Md. 680, 688, 705 A.2d 1144 (1998). "An invitee is a person 'on the property for a purpose related to the possessor's business.'" *Id.* (quoting *Lane,* 338 Md. at 44, 656 A.2d 307). He is owed a duty of ordinary care to keep the property safe. A licensee by invitation is a social guest to whom is

owed the "duty to exercise reasonable care to warn ... of dangerous conditions that are known to the possessor but not easily discoverable." *Id.* at 689 (quoting *Lane,* 338 Md. at 44, 656 A.2d 307). A bare licensee is one who enters the property of another with the possessor's knowledge and consent, but for the licensee's own purpose or interest. *Wells v. Polland,* 120 Md.App. 699, 710, 708 A.2d 34 (1998). He is owed a duty to refrain from willfully or wantonly injuring him "and from creating 'new and undisclosed sources of danger without warning'" him. *Flippo,* 348 Md. at 689, 705 A.2d 1144 (quoting *Wagner v. Doehring,* 315 Md. 97, 102, 553 A.2d 684 (1989)). Finally, "a trespasser is one who intentionally and without consent or privilege enters another's property." *Flippo,* 348 Md. at 689, 705 A.2d 1144. He is owed the most limited duty: to refrain from willfully or wantonly injuring or entrapping. *Id.*

As the Court observed in *Flowers,* however, public officials and employees who enter upon land pursuant to a privilege do not fit easily into this matrix of classifications. Because they are privileged to enter the property, they are not trespassers. Yet, because they generally do not receive an invitation from the possessor to enter onto the property, they are "not literally either an invitee or licensee." *Flowers v. Sting Security, Inc.,* 62 Md.App. 116, 126, 488 A.2d 523 (1985), *aff'd sub nom. Flowers v. Rock Creek Terrace, supra.* Usually, public employees such as postal workers, sanitary and building inspectors, garbage men, and tax collectors are considered invitees who are owed a duty of due care. *Flowers,* 308 Md. at 444, 520 A.2d 361; *see also* W. Prosser, *The Law of Torts,* § 61 (5th ed.1984). Their invitee status is explained on the ground that they enter onto private property for reasons related to the possessor's business, either to confer a direct benefit on the possessor (e.g., trash removal or mail delivery) or to enable the possessor to legally conduct business (e.g., the various types of inspectors and revenue officers). *Flowers,* 308 Md. at 444, 520 A.2d 361.

In this case, Rivas did not enter upon Oxon Hill's and Southern's property to provide a direct benefit to them or to any of the residents of their apartment complex; nor did he do so to advance a particular business purpose they might have had. Oxon Hill and Southern maintain that, for these reasons, the trial court correctly categorized Rivas as a bare licensee on the premises, to whom no duty of ordinary care was owed. We disagree.

Although the specific task that Rivas entered upon the grounds of the apartment complex to perform on the evening in question may not have been for the direct benefit of Oxon Hill and Southern, as business entities, or any of the apartment dwellers; as individuals, the overall public safety benefit conferred by law enforcement officers upon business owners and individuals enured to the benefit of Oxon Hill and Southern, their tenants, and their tenant's visitors. Indeed, it is because they confer a public safety benefit that law enforcement officers and firefighters are privileged to enter upon private property to begin with.

Even before the Court of Appeals in *Flowers* rejected premises liability law as a proper vehicle for analyzing the Fireman's Rule, it had recognized that that rule did not apply to a firefighter or police officer who had sustained injuries "after the initial period of his anticipated occupational risk, or from perils not reasonably foreseeable as part of that risk." *Aravanis v. Eisenberg*, 237 Md. 242, 252, 206 A.2d 148 (1965). In *Flowers*, the Court reiterated that observation, adding: "In these situations a fireman or policeman is owed a duty of care." 308 Md. at 448, 520 A.2d 361. Logic would dictate, therefore, that a police officer or firefighter who is injured while entering upon property, but *before* the period of anticipated risk and not from a peril reasonably foreseeable as part of that risk, also would be owed a duty of ordinary care. That was precisely the situation in which Rivas sustained his injuries. He had not yet arrived at the location at which he would serve the subpoena and he was not injured in the performance of that job. Nevertheless, he was privileged to enter onto the common area of the premises to obtain access to the apart-

ment at which he expected to serve the subpoena. Under the circumstances, it would seem that if Oxon Hill and Southern owed a duty of ordinary care to others lawfully entering onto the common area of the apartment complex, they would owe an equivalent duty of care to Rivas, absent evidence to distinguish the two.

It is well-settled in Maryland that a landlord who leases a portion of his property to tenants and reserves another portion of the property for the common use of the tenants must exercise ordinary care to keep the common area reasonably safe. *Shields v. Wagman,* 350 Md. 666, 673–74, 714 A.2d 881 (1998); *Macke Laundry Serv. Co. v. Weber,* 267 Md. 426, 435, 298 A.2d 27 (1972); *Windsor v. Goldscheider,* 248 Md. 220, 222, 236 A.2d 16 (1967); *Langley Park Apartments, Sec. H., Inc. v. Lund Adm'r,* 234 Md. 402, 407, 199 A.2d 620 (1964). "[L]andlord liability in common areas is generally premised on the control a landlord maintains over the common areas. This duty stems in part 'from the responsibility engendered in the Landlord by his having extended an invitation, express or implied, to use the portion of the property retained by him.'" *Shields,* 350 Md. at 674, 714 A.2d 881 (quoting *Landay v. Cohn,* 220 Md. 24, 27, 150 A.2d 739 (1959)). The landlord's duty to exercise reasonable care to keep common areas safe extends not only to his tenants but also to his tenants' guests. *Sezzin v. Stark,* 187 Md. 241, 250, 49 A.2d 742 (1946); *Murray v. Lane,* 51 Md.App. 597, 601, 444 A.2d 1069 (1982).

In the case *sub judice,* the parking lot over which Rivas was walking when he slipped and fell was a common area of the apartment complex retained by Oxon Hill and Southern for the use of tenants and their guests and over which Oxon Hill and Southern maintained control. Thus, Oxon Hill and Southern already owed to their tenants and their tenants' guests a duty of ordinary care to keep the parking lot reasonably safe. It was undisputed that the parking lot was accessible to and used by tenants and their guests at all hours of the day and night. There was no

evidence that the law enforcement purpose for Rivas's entry upon the parking lot caused him to come upon it at a time or in a manner implicating risks above and beyond those the tenants and guests of tenants entering upon the property might encounter. As we see it, therefore, neither public policy nor premises liability law justifies drawing a distinction between the duty owed by Oxon Hill and Southern to tenants and their guests entering upon the common area parking lot by express or implied invitation and the duty owed by them to Rivas, who entered upon the same property by privilege.

Because Rivas was owed a duty of ordinary care, liability in this case was a jury question.

**JUDGMENT REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEES.**