854 A.2d 269

## SHASTRI NARAYAN SWAROOP, INC.,

v.

## Jonathan D. HART, et ux.

## No. 226, Sept. Term, 2003.

Court of Special Appeals of Maryland.

July 19, 2004.

David S. Goldberg, Hunt Valley, for Appellant.

Mark C. Miller (William J. Blondell, Jr., on the brief), Baltimore, for Appellee.

Panel: DAVIS, SONNER and KENNEY, JJ.

DAVIS, Judge.

Firefighter appellee, Jonathan Hart, on appeal, asseverates a belief that there is an undercurrent eroding application of the fireman's rule. Because the trend has been "logically further extended," he contends, by the recent decision of the Court of Appeals in *Tucker v. Shoemake,* 354 Md. 413, 731 A.2d 884 (1999), and our decision in *Rivas v. Oxon Hill Joint Venture,* 130 Md.App. 101, 744 A.2d 1076 (2000), he asks that we affirm the jury award of $454,396.43. The very decisions, upon which he relies, however, deftly submerge the proposition he espouses on appeal.

Appellee [1] filed suit against appellant Shastri Nayaran Swaroop, Inc., owner and operator of the Regal Inn on Pulaski Highway in Baltimore County, for injuries sustained while responding to a fire at the motel. Subsequent to discovery, including extensive depositions of parties and witnesses, appellant filed a motion for summary judgment, asking the lower court to rule that the fireman's rule applies as a matter of law. After appellee responded, the Circuit Court for Baltimore

---

1. Suit was filed by Jonathan D. Hart and Sabrina Hart, his wife, who claimed consortium. Reference hereinafter to "appellee" in the singular refers to Jonathan Hart.

**66**

County conducted a hearing on November 5, 2001 and denied the motion.

A trial was then held from March 10 to 12, 2003, during which appellant made a motion for judgment after the conclusion of appellees' case, which was denied, as was appellant's renewed motion for judgment after all of the evidence had been presented. The case was subsequently submitted to the jury which returned its verdict on March 12, 2003; judgment was entered on March 13, 2003.

The instant appeal followed in which appellant raises the following questions:

I.  Did the [c]ircuit [c]ourt err or abuse its discretion in denying appellant's motion for summary judgment?

II. Did the [c]ircuit [c]ourt err or abuse its discretion in denying appellant's motions for judgment during the jury trial, thus permitting the matter to be submitted to the jury?

III. Did the [c]ircuit [c]ourt err or abuse its discretion in refusing to instruct the jury with respect to the Maryland law on liability of a premises owner for an injury sustained by one coming onto the premises with regard to the legal status of that individual at the time of the injury and the nature of the cause or event resulting in the injury?

IV. Assuming that summary judgment was properly denied, motions for judgment were properly denied, and the jury instructions were appropriate, did the jury verdict conform to the evidence and to the instructions?

Because we hold that the fireman's rule is applicable and the circuit court therefore erred in denying appellant's motion for summary judgment and motions for judgment, we need not reach questions 3 and 4. We shall, accordingly, reverse the judgment of the circuit court.

## FACTUAL BACKGROUND

Summarily, at approximately 4:30 a.m. on January 25, 2000, appellee, after responding to a call for a fire, was injured when he fell several feet down an open stairwell as he attempted to make his way to the second level of appellant's motel where patrons were ostensibly trapped. Undisputably, he fell because of low visibility. Appellee submitted what he styled as the "material facts" in his memorandum in support of his response to appellant's motion for summary judgment:

*II.  Material Facts*

In January 2000, the Plaintiff, Jonathan Hart, was employed as a Lieutenant with the Baltimore County Fire Department. Jonathan Hart was assigned to the Station Number 15, Eastview. On January 25, 2000, between 4:30 a.m. and 5:00 a.m., Jonathan Hart and other members of the Baltimore County Fire Department responded to a call for a motel fire on Pulaski Highway.

Upon arrival at the Regal Inn, the firefighters encountered heavy fire and smoke conditions. The building was not visible upon arrival due to the heavy smoke. Fire was observed on the second floor of the two-story motel. Jonathan Hart was ordered to perform search and rescue on the side of the building. Mr. Hart gathered his equipment, including a thermal imaging device, and proceeded to the side of the building to search for victims.

A thermal imaging device or camera detects differences in temperature and is used to search for victims and to determine the location of the fire. The operator of the camera can look through it and see a silhouette with any temperature change within one tenth of a degree. The camera is used in "view and move" fashion. In other words, the operator of the device views an area, then lowers the camera and moves in the direction viewed.

Mr. Hart, standing in the parking lot on the side of the building, *sought access to the second floor of the motel to search for trapped victims. Mr. Hart, as he could not otherwise see because of darkness and smoke, viewed the*

*building through the thermal imaging camera* and determined that there was no fire below the second floor. He then looked for a stairway to access the second floor. He saw what he believed to be a stairway and walked towards the building. He did not look into the thermal imaging camera once he began walking. A railing extended along the walkway on the side of the building. Mr. Hart used the railing as a guide into an otherwise blind path as he walked with his equipment. As he walked along the railing, he stepped into space, falling several feet into an open and unguarded stairwell. Mr. Hart sustained severe injuries as a result.

(Emphasis added.)

During discovery, appellee testified at his deposition on January 11, 2001:

Q. Was there, were there flames visible?

A. Yes.

Q. Was there smoke visible?

A. It was dark out, but I would say yes.

Q. All right. And where was the smoke, to the best of your recollection?

A. Coming from that area. And the smoke that I could see—I don't know the answer to that question.

Q. Well, was—

A. I can't tell, I mean, I don't remember what, it's hard to describe seeing smoke, is what I'm saying. If you're looking at it against the moonlight, you can say yeah, [sic] I see smoke. When you're looking at a dark building, it's hard to say you see it.

Q. Was there smoke on the first floor?

A. I don't remember. I don't remember.

Q. Was there smoke on the parking lot?

A. I would say yes, but I don't—I remember smelling smoke more than I remember seeing it.

Q. You didn't see it, you smelled it?

A. Well, I'm not saying I didn't see it. But I, I, I[sic] would say I don't remember.

. . .

A. At this point I surveyed the first floor of the building. I had checked for fire in this area, but I was also interested, I didn't know how to get upstairs.

Q. Okay.

A. I didn't know how to get to the second floor. I looked for a stairwell, and I thought I saw a stairwell over here.

. . .

Q. All right, Mr. Hart. So you were looking for a stairwell, and you thought you found one?

A. Right.

Q. Could you go on?

A. Okay. At that point I walked sort of towards the building, I could see this railing here. And came to the railing. And was along the railing, carrying my equipment. I wasn't looking through the thermal imager after I left this point.

. . .

Q. Okay. Continue.

A. So I didn't see a space up into the sidewalk here, up to the sidewalk. So, now, but I saw what I thought was a stairwell down here anyway.

Q. When you refer to a space, are you referring to a stairwell?

A. No, no, no. I didn't see somewhere to walk through the railings.

Q. Okay.

A. But it didn't make any difference to me at that point because I thought I saw a stairwell down here. So I

moved towards the stairwell. And I was holding, with my equipment, I had took [sic] everything with me. And the next thing I knew, I was, I was lying upside down on a stairwell.

Q. So, in fact, you did see a stairwell, it just wasn't what you perceived?

A. No.

Q. Okay.

A. I don't think that's what I even saw. I was looking past that. Because, in other words—I understand what you're saying. And I could understand that if I was looking down the stairwell. In other words, if I was looking down a stairwell with a thermal imager, I would have seen a series of lines which I would have perceived as steps. But if I was holding the thermal imager at the wrong angle, then I wouldn't have been looking at steps going up, I would have been looking at steps going down. But where I was standing I was looking across the stairwell.

Q. All right. Let me see if I get this correctly. You were looking through the thermal imager.

A. Uh-huh.

Q. And you were looking straight ahead?

A. Yes.

Q. And the thermal imager did not pick up steps?

A. Which ones, the ones I fell down?

Q. Yes.

A. Yes, because I was aiming it past that.

Appellee's "Material Facts" and deposition testimony above were not controverted by appellant and constituted the principal basis upon which the circuit court denied appellant's motion for summary judgment.

## SUMMARY JUDGMENT

Appellee contends that the court properly denied appellant's motion for summary judgment because "the negligence which

caused [appellee's] injuries was independent of the reason his services as a fireman were required at the location."

Summary judgment is appropriate when, reviewing the entire record, and drawing all reasonable inferences in favor of the party against whom summary judgment is sought, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Md. Rule 2–501(e); *Okwa v. Harper*, 360 Md. 161, 178, 757 A.2d 118 (2000); *Magee v. DanSources Technical Servs., Inc.*, 137 Md.App. 527, 769 A.2d 231 (2001).

The purpose of summary judgment is to determine whether there are facts in dispute that must be resolved through a more formal dispute resolution process, such as a trial on the merits. *Eng'g Mgt. Servs., Inc. v. Md. State Highway Admin.*, 375 Md. 211, 228, 825 A.2d 966 (2003). Summary judgment is not a procedural vehicle to be used to determine factual disputes, but rather to determine whether there is a dispute over a material fact or facts that should be tried." *Id.* (citing *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.*, 335 Md. 135, 144–45, 642 A.2d 219 (1994)); *Di Grazia v. County Executive*, 288 Md. 437, 445, 418 A.2d 1191 (1980).

A party to an action is entitled to summary judgment if there is no dispute as to any material fact and the party is entitled to judgment as a matter of law. *Grimes v. Kennedy Krieger Inst.*, 366 Md. 29, 71, 782 A.2d 807 (2001). "A material fact is a fact the resolution of which will somehow affect the outcome of the case." *Id.* at 72, 782 A.2d 807 (quoting *King v. Bankerd*, 303 Md. 98, 111, 492 A.2d 608 (1985)). We are required to consider any pleadings, motions, depositions, and affidavits properly in the record before the trial court. *Ashton v. Brown*, 339 Md. 70, 79, 660 A.2d 447 (1995). All facts and reasonable inferences must be construed in favor of the non-moving party. *Id.* If any genuine dispute of material fact exists, then summary judgment should not be granted. *Delia v. Berkey*, 41 Md.App. 47, 51, 395 A.2d 1189 (1978).

The Court of Appeals in *Beatty v. Trailmaster*, 330 Md. 726, 625 A.2d 1005 (1993), explained in more salient terms what constitutes a "material fact" at 738–39:

> As the Supreme Court said in *Anderson[ v. Liberty Lobby]*, *supra*, 477 U.S. [242,] [ ] 247–48, 106 S.Ct. [2505,] [ ] 2509–10[, 91 L.Ed.2d 202] [ (1986) ], the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (Emphasis in original.) Thus, when a movant has carried its burden, the party opposing summary judgment "must do more than simply show there is some metaphysical doubt as to the material facts." In other words, the mere existence of a scintilla of evidence in support of the plaintiffs' claim is insufficient to preclude the grant of summary judgment; there must be evidence upon which the jury could reasonably find for the plaintiff. *Anderson*, *supra*, 477 U.S. at 252, 106 S.Ct. at 2512. We recognized in *Clea v. City of Baltimore*, 312 Md. 662, 678, 541 A.2d 1303 (1988), that while a court must resolve all inferences in favor of the party opposing summary judgment, "[t]hose inferences ... must be *reasonable* ones." (Emphasis in original.) In that case, we quoted Professor Wright, as follows:
>
> > It is frequently said that summary judgment should not be granted if there is the "slightest doubt" as to the facts. *Such statements are a rather misleading gloss on a rule that speaks in terms of "genuine issue as to any material fact" and would, if taken literally, mean that there could hardly ever be a summary judgment, for at least a slight doubt can be developed as to practically all things human. A better formulation would be that the party opposing the motion is to be given the benefit of all reasonable doubts in determining whether a genuine issue exists.*

(Emphasis added; footnote and other citations omitted)

■ Appellant, on August 30, 2001, filed its Motion and Memorandum for Summary Judgment. Appellees filed their

response to appellant's motion on September 18, 2001, asserting the existence of a genuine dispute as to material facts and that appellant was not entitled to summary judgment as a matter of law. On September 27, 2001, appellees filed their Memorandum of Law in Support of [Appellee's] Response to Motion for Summary Judgment.

Applying the *Beatty* principles to the case at hand, as will be discussed more fully, *infra*, the only material facts on the issue of the fireman's rule were (a) whether appellee was injured during a period of anticipated occupational risk, (b) whether the injury occurred in the performance of appellee's duties and was not independent of the reason he was required to be on the premises, (c) whether there was a latent defect or "hidden danger" giving rise to a duty to warn. None of the material facts which bore upon a determination of whether the fireman's rule was applicable were in dispute. Curiously, notwithstanding that appellee filed his response to the motion for summary judgment on September 1, 2001, asserting a genuine dispute as to material facts and that appellant was not entitled to summary judgment as a matter of law, with his supporting memorandum appended thereto, nowhere in the response or memorandum does he identify the disputed facts. Because the material facts were not in dispute, the trial court should have rendered a decision as to the applicability of the fireman's rule. The question presented was legal rather than factual.

Based on a review of Maryland decisions, only on rare occasions has the applicability of the fireman's rule been submitted as an issue of fact to the jury.[2] In most cases, the

---

2. *Aravanis v. Eisenberg*, 237 Md. 242, 206 A.2d 148 (1965), is a case in which the question of whether the premises owners were negligent in storing acetone in a glass jug rather than in a metal container in violation of the Montgomery County Code was submitted to the jury. The appellant's theory, in *Aravanis*, was that he was not injured because of the fire but because "the failure of the appellees to keep the acetone in a proper container was negligence operative apart from the fire, and that this negligence caused the injury." *Id.* at 253–54, 206 A.2d 148. The Court of Appeals held that there was sufficient evidence to support this theory to go to the jury. The case at hand presents no issue of

circumstances which bear upon whether the rule applies are not in dispute. The ruling, we believe, should have been that the fireman's rule presented a bar to appellee's recovery, thereby obviating the need to consider the second sub-issue, i.e., whether appellee was owed a duty of ordinary care.

Based on the fact that there was no genuine dispute of material fact and that the disposition of the summary judgment motion depended only upon the resolution of a question of law, the trial judge was obliged to proceed by first determining whether the fireman's rule precluded appellee from recovering in tort and, if not, whether he was owed a duty of ordinary care or a duty only to refrain from willful and wanton misconduct or entrapment. *See Rivas v. Oxon Hill Joint Venture*, 130 Md.App. 101, 107, 744 A.2d 1076 (2000). Thus, in the first instance, whether the fireman's rule applied was a question of law to be decided by the trial judge. A determination by the court that the fireman's rule was applicable would compel a grant of the motion for summary judgment.

## THE FIREMAN'S RULE

### Public Policy

Delineating the circumstances under which the rule is applicable, the Court of Appeals, in *Flowers v. Rock Creek Ltd. P'ship*, 308 Md. 432, 447–48, 520 A.2d 361 (1987), penned:

We agree that the fireman's rule is best explained by public policy. As pointed out in *Aravanis v. Eisenberg, supra*, 237 Md. at 251–252, 206 A.2d 148, it is the nature of the firefighting occupation that limits a fireman's ability to recover in tort for work-related injuries. Instead of continuing to use a rationale based on the law of premises

---

negligence occurring "chronologically, after the expected peril of the fire had been met," as the Court of Appeals framed the question in *Aravanis. Id.* at 254, 206 A.2d 148. The appellee's fall down the stairwell occurred during—and as a consequence of—the "initial occupational hazard of the fire." *Aravanis* is one of the few cases in Maryland in which there were disputed facts requiring a determination by the jury as to the applicability of the fireman's rule.

liability, we hold that, as a matter of public policy, firemen and police officers generally cannot recover for injuries attributable to the negligence that requires their assistance. This public policy is based on a relationship between firemen and policemen and the public that calls on these safety officers specifically to confront certain hazards on behalf of the public. A fireman or police officer may not recover if injured by the negligently created risk that was the very reason for his presence on the scene in his occupational capacity. Someone who negligently creates the need for a public safety officer will not be liable to a fireman or policeman for injuries caused by this negligence.

■■ We reiterate, however, that firemen and policemen are not barred from recovery for all improper conduct. Negligent acts not protected by the fireman's rule may include failure to warn the firemen of pre-existing hidden dangers where there was knowledge of the danger and an opportunity to warn. They also may include acts which occur subsequent to the safety officer's arrival on the scene and which are outside of his [or her] anticipated occupational hazards.

(Footnote omitted.)

Expanding upon the public policy rationale undergirding the fireman's rule, the Supreme Court of New Jersey, in *Krauth v. Geller*, 31 N.J. 270, 157 A.2d 129, 131 (1960), opined:

The rationale of the prevailing rule is sometimes stated in terms of "assumption of risk," used doubtless in the so-called "primary" sense of the term and meaning that the defendant did not breach a duty owed, rather than that the fireman was guilty of contributory fault in responding to his public duty. *See Meistrich v. Casino Arena Attractions Inc.*, 31 N.J. 44, 155 A.2d 90 (1959). *Stated affirmatively, what is meant is that it is the fireman's business to deal with that very hazard and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said there is none owed the fireman to exercise care*

*so as not to require the special services for which he is trained and paid.* Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences. Hence, for that risk, the fireman should receive appropriate compensation from the public he serves, both in pay which reflects the hazard and in workmen's compensation benefits for the consequences of the inherent risks of the calling.

(Emphasis added.)

Hence, there has been a shift from premises liability, as a matter of public policy, to the relationship between the firefighters and police officers, on the one hand, and the public, which policy bars recovery in tort in all but very limited circumstances.

In addition to the "covenant" between police officers and firefighters and the public they serve, Judge Harrell, writing for the Court of Appeals in *Crews v. Hollenbach,* 358 Md. 627, 653, 751 A.2d 481 (2000), recognized that the rule is supported in contemporary writings by yet another rationale:

In our more contemporary fireman's rule cases, a secondary rationale for existence of the rule is found which is particularly relevant to this case. It focuses not on the public policy considerations of a firefighter as a public servant, *but on firefighting as an inherently dangerous occupation.* The fireman's rule is based in part on the notion that when an occupation exists in wholly or partially for the purpose of confronting dangers posed to the public, it is inappropriate to allow the worker to recover for injuries resulting from the very purpose for which he or she is employed. Stated differently, a firefighter who is injured by a risk inherent in the task of firefighting may be barred from asserting claims for those injuries because it is the firefighter's duty to deal with fires and he or she cannot

recover damages caused by the reason that made his or her employment necessary.

(Emphasis added; internal citation omitted.)

From the foregoing, it is clear that, if anything, the rationale undergirding the rule has become more expansive.

### Injury During Period of Anticipated Occupational Risk

Appellee seeks solace in the decision in *Tucker v. Shoemake,* 354 Md. 413, 731 A.2d 884 (1999), pointing out that the Court of Appeals "reasoned that the officer 'was not injured by the negligently-created risk that occasioned his presence at the trailer park.'" *Id.* at 419, 731 A.2d 884. In *Tucker,* the appellant police officer, responding to a domestic dispute, was injured after exiting his vehicle, when he stepped onto an improperly seated manhole cover as he proceeded over a common area in his approach to the trailer.

With unmistakable clarity, the fact that the negligence which caused the injury in *Tucker* was independent and not related to the situation requiring the officer's services was the basis upon which the Court held the fireman's rule to be inapplicable. The Court said at 354 Md. at 419–21, 731 A.2d 884:

> This case is not one in which the Fireman's Rule applies to preclude recovery. Officer Tucker was not injured by the negligently-created risk that occasioned his presence at the trailer park. He was at the trailer park in response to a domestic dispute call, whereas he was injured as a result of stepping on the allegedly improperly seated metal cover to the underground valve compartment. Thus, the negligence alleged to have caused Officer Tucker's injuries was independent and not related to the situation requiring his services as a police officer.
>
> . . .

The injury arose from a cause independent of the reason plaintiff was called to the premises". *Cf. Schreiber v. Cherry Hill Constr. Co.,* 105 Md.App. 462, 474–75, 660 A.2d 970, 976 (applying *Flowers* in holding that the Fireman's

Rule did not bar a police officer's claim for injuries suffered when, while investigating a motor vehicle accident, a car went out of control, crossed through a flare safety line, and struck the police officer; the negligence of the driver and the contractor who constructed the curve on which the car lost control was independent of what necessitated the presence of the police officer), *cert. denied,* 340 Md. 500, 667 A.2d 341 (1995).

Conversely, had Officer Tucker suffered some injury *due to a negligent condition in the trailer where the domestic dispute was or had been in progress, the Fireman's Rule likely would apply.*

(Emphasis added.)

Similarly, when a deputy sheriff slipped and fell on a patch of ice as he was en route to serving a subpoena to a witness in a landlord-tenant case, we said, in *Rivas:*

Logic would dictate, therefore, that a police officer or firefighter who is injured while entering upon property, but *before* the period of anticipated risk and not from a peril reasonably foreseeable as part of that risk, also would be owed a duty of care. That was precisely the situation in which Rivas sustained his injuries. *He had not yet arrived at the location at which he would serve the subpoena and he was not injured in the performance of that job.*

*Rivas,* 130 Md.App. at 111, 744 A.2d 1076 (Emphasis added.)

Regarding the nexus between the injury and any negligence for which the officer's presence on the premises was required, we said:

The purpose for Rivas's visit to the Oxon Hill Apartments was to perform the duty of serving a subpoena. The negligence that allegedly caused his injury, however, was unrelated to the situation that required his services. Rivas was injured on account of an allegedly defective condition of the common area parking lot of the apartment complex, across which he walked on his approach to the apartment unit in which he intended to serve the subpoena. *He was not in the process of serving the subpoena when he was*

*injured and his injuries were not brought about by the activity of subpoena serving.* Because Rivas's injuries did not arise out of the very occasion for his employment, i.e., the serving of the subpoena, the Fireman's Rule was inapplicable.

*Id.* at 109, 744 A.2d 1076 (emphasis added).

Had Rivas fallen as he was in the process of delivering the subpoena, undoubtedly, the rule would have applied. Thus, had appellee been injured prior to the point in time when he was attempting to rescue the patrons on the second floor of the motel or had there been an "independent" act of negligence, not associated with his duties as a firefighter, *Tucker* and *Rivas* would apply.

In *Flowers,* the Court of Appeals held that the fireman's rule applied to appellant, a volunteer firefighter, who fell twelve stories down an open elevator shaft while responding to a fire in an apartment building. Citing to the nature of services performed by firefighters as delineated in *Aravanis, supra,* the Court, in *Flowers,* observed that firefighters may not recover if injured by "the flames or gases of the conflagration" because "[f]ighting the fire, however caused, is his [or her] occupation." *Flowers* 308 Md. at 442, 520 A.2d 361. Regarding the temporal element, the *Flowers* Court explained (citing *Sherman v. Suburban Trust Co.,* 282 Md. 238, 242, 384 A.2d 76 (1978)):

> Sherman was injured *during, and not after, the initial period of his anticipated occupational risk,* and from a hazard reasonably foreseeable as a part of that risk. He was not injured by reason of any active dangerous force unleashed on the premises after he entered *upon the routine performance of his duties.*

*Id.* at 443, 520 A.2d 361 (emphasis added). Notably, *Flowers* involved an open elevator shaft; similarly, the instant case involves an open stairwell.

■ In *Flood v. Attsgood Realty Company,* 92 Md.App. 520, 608 A.2d 1297 (1992), we held that the property owner was insulated by the fireman's rule from suit by a police

officer who, along with other officers, entered the premises to investigate possible narcotics violations and fell through a hole in the floor. Adopting the rationale of *Flowers,* we reiterated that the police officer was barred from recovery for injuries occurring on defective premises to which he had gone to perform his official duties. A review of the relevant decisions has failed to uncover the restrictive principle as to causation employed by the trial judge. Rather, the fireman's rule has been uniformly held applicable when a firefighter is injured by "the negligently created risk that was the very reason for his [or her] presence on the scene" during the period of anticipated occupational risk."

█ Appellee's deposition testimony unequivocally demonstrates that he was in the process of attempting to rescue motel patrons when, because of diminished visibility due to smoke, he fell down the stairwell. In his written submission to the circuit court, appellee states: "At that time and place, [appellee] was attempting to rescue motel patron [sic] trapped by the fire and he was using a thermal imaging camera looking for a means to climb to the second floor. *There was dense smoke limiting visibility to a few feet.*" As appellee reached a hand railing, which was parallel to the building, he turned left to walk to the corner of the building and fell down the open stairwell. Patently, appellee was engaged in his duties as a firefighter when he fell and sustained his injuries. With respect to his purpose for being on the premises and the point in time when the injury occurred in relation to that purpose, the undisputed facts compel the conclusion that the injury cannot be considered to have occurred other than "during the period of anticipated occupational risk." Nor was the injury sustained independent of appellee's reason for being on the premises.

### Duty to Warn

█ Undisputed is that the manager of appellant's motel was on the premises when the firefighters responded. Also acknowledged by appellant is the fact that no warnings were issued to the firefighter regarding the open stairwell. The

owner or occupant of a premises must abstain from willful or wanton misconduct or entrapment. *Flowers*, 308 Md. at 443, 520 A.2d 361. This encompasses a duty to warn of hidden dangers when there was knowledge of such danger and an opportunity to warn. Although recent decisions and modern commentators have shifted the rationale undergirding the fireman's rule to one based on public policy considerations, the character of what constitutes "hidden dangers" was explicated eighty years ago in *Steinwedel v. Hilbert*, 149 Md. 121, 131 A. 44 (1925). In *Steinwedel*, a case like *Flowers* involving a fall into an open and unguarded elevator shaft by an employee of a firm engaged in the salvaging of property endangered by fire, the Court of Appeals explained:

In this present case there is no allegation that the elevator shaft was opened in or near a way prepared and set apart as a passage way, and the case is not rested upon any such concealment or deceptive appearance, "*something like fraud,*" *put in the path of the plaintiff, as would render the danger a trap.* ... As has been said, the many cases which have dealt with it have almost unanimously held that there was no liability; and there seems to us to be no tendency to discard or qualify the rule for exactly that situation, whatever tendency there may be in dealing with other cases. *Id.* at 125, 131 A. 44.

The Court of Appeals, in *Flowers*, 308 Md. at 440, 520 A.2d 361, reiterated the *Steinwedel* holding regarding "hidden dangers," stating that the case was not predicated upon "concealment or deceptive appearance, something like fraud, put in the path of the plaintiff, as would render the danger a trap." To like affect, citing *Flowers*, 308 Md. at 443, 520 A.2d 361, we said in *Flood*, 92 Md.App. at 527, 608 A.2d 1297, that the premises owner must "abstain from willful or wanton misconduct *or entrapment.* (Emphasis added.) This encompasses a duty to warn of hidden dangers, where there was knowledge of such danger and an opportunity to warn." Decisions discussing what constitutes a "hidden danger" make clear that the duty to warn is triggered by a latent defect that is imperceptible under ordinary circumstances. The inability to

perceive the danger cannot be, as appellee contends, the result of the conflagration that is the very reason for appellee's presence on the scene in his occupational capacity.

▌ A passage from *Flowers* is the short answer to appellee's contention that the open stairwell was a "hidden danger" imposing a duty to warn:

> Moreover, an open elevator shaft is not a "hidden danger" of which firemen must be warned. In Flowers's declaration, he alleged that he was evacuating tenants from a "hallway of a building where there was heavy smoke." *An open elevator shaft concealed by the smoke of the fire is not a hidden danger in the sense of an unreasonable danger that a fireman could not anticipate upon attempting to perform his firefighting duties.*

*Flowers*, 308 Md. at 451–52, 520 A.2d 361 (Emphasis added.)

Appellee contends that "[t]he open and unguarded stairwell became a hidden danger when it was obscured by a[sic] smoke, heavy snow, and poor lighting in the darkened, early morning hours of January 25, 2000." As discussed, *supra*, *Tucker* did not devolve upon a question of "limited visibility," but rather upon whether the injury sustained "was independent and not related to the situation requiring his services as a police officer." *Tucker*, 354 Md. at 420, 731 A.2d 884.

*Flowers* and *Steinwedel* specifically discuss whether the elevators constituted "hidden dangers," holding that such a danger contemplates "concealment or deceptive appearance, something like fraud, put in the path of the plaintiff, as would render the danger a trap." In no sense could the stairwell be construed as a "hidden danger." Appellee, could only expect to confront limited visibility resulting from the smoke, snow, and darkness at 4:30 a.m. in the middle of the winter season; it is the very danger and risk brought on by the fire which impaired appellee's visibility. And it is that very fire that occasioned appellee's presence on the premises. Moreover, it is illogical to contend that the open stairwell "*became* a hidden danger," *after* the smoke from the fire caused diminished visibility. In other words, prior to the outbreak of the fire

which occasioned appellee's presence on the premises, the alleged danger was not hidden. The suggestion that conditions transformed the stairwell into a "hidden danger" is contrary to the requirement that it be pre-existing. *Flowers,* 308 Md. at 448, 520 A.2d 361.

A case factually similar to the instant case, *Krauth, supra,* involved a firefighter who had made previous visits to the property which caused him to be familiar with the fact that there was no hand rail on the unguarded balcony from which he fell. *Krauth* turned on the question of "wantonness," the Court holding that "[a]nd although injury to a fireman is surely foreseeable, and this despite the rather freak circumstance that layers of smoke simulated a stairway, yet there was no evidence of a consciousness, actual or imputable, of a high degree of probability that harm would befall a fireman." *Krauth,* 157 A.2d at 133. *Krauth,* a decision very factually similar to the instant case in that it involves an allegation of failure to install a guardrail, in emphatic terms, supports the application of the fireman's rule in the present case.

Unquestionably, the case *sub judice* is governed by the holdings of *Flowers* and *Steinwedel,* rather than *Tucker* and *Rivas.* Appellee, unlike in the cases of *Tucker* and *Rivas,* was in the act of performing his duties when he was injured and the danger was coincidental with firefighting and was neither hidden nor independent of the negligence which caused appellee to be on the premises.

### *Motion for Judgment*

Appellee acknowledges in his brief that the facts adduced at trial were essentially the same as those before the lower court on the motion for summary judgment. He maintains, "The evidence produced at the trial by the parties with respect to the [f]ireman's [r]ule was not materially different than the deposition testimony and other evidence relied upon by the parties in the Motion for Summary Judgment and the [a]ppellees' response thereto." Appellee is correct that the evidence differed in no material respect regarding the facts pertinent to

a determination of the applicability of the fireman's rule. The court, in denying appellant's motion for judgment, said:

Well having read the cases that deal with the fireman's rule and premise[ ] liability as it is applied to public servants, particularly law enforcement officers and firemen, the court notes that the law is rather imprecise and certainly extremely fuzzy giving trial judges very little direction as to how to proceed.

So accordingly, the court does not feel it appropriate to rule as a matter of law, but feels that the issue should be presented to the jury as a trier of fact in the case *to determine whether or not there was any nexus between the smoke, which is obviously connected with [appellee's] duties as a firefighter, and his fall down the stairs in question.*

(Emphasis added.)

Appellee, in his deposition testimony, as well as in his written submissions to the lower court, conceded that the smoke from the fire contributed to his diminished visibility. The conflagration was unquestionably the reason appellee was on the premises and its extinguishment quintessentially was his primary official duty as a firefighter. There being no dispute that the injury occurred during appellee's performance of his duties as a firefighter, the court erred in framing the issue as one of causation, i.e., whether the smoke caused appellee to fall. By appellee's own admission, diminished visibility resulting from the smoke caused him to fall. But assuming, *arguendo,* that the smoke had been only one of several causes of appellee's fall or that it was not a cause at all (which certainly is not the case), the fireman's rule would nonetheless be applicable because appellee was injured in the course of performing his official duties, during the period of anticipated occupational risk.

The circuit court erred in the manner in which it framed the issue. Whether appellee's vision was impaired by the smoke or a combination of the smoke and the darkness, neither the smoke nor the darkness constituted an unanticipated risk. More important, the nexus between the smoke and appellee's

fall was not a material fact. The determinative factor in deciding the applicability of the fireman's rule is whether the injury occurs during the performance of the duties of a firefighter or a police officer in confronting the risk that was the very reason for his or her presence on the scene, regardless as to whether the injury was proximately caused by diminished visibility due to the smoke from the fire. In other words, but for his presence on the scene acting in his occupational capacity as a firefighter, he would not have been injured.

As noted, there were no disputed facts between the parties—only a difference in emphasis and submission of different collateral details which were not controverted by the opposing sides. Although, the correct decision would have been to rule that the fireman's rule was applicable, the circuit court, in any event, was required to enter summary judgment declaring either that the fireman's rule was applicable or was not applicable.

Moreover, for the same reasons, the motion for judgment should have been granted in favor of appellant, i.e., the injury occurred while performing his duties, the negligence did not constitute an independent act, and the open stairwell did not constitute a "hidden danger."

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED; CASE REMANDED WITH DIRECTIONS TO ENTER JUDGMENT FOR APPELLANT.**

**COSTS TO BE PAID BY APPELLEES.**

SONNER, Judge, dissenting.

The majority holds that the Fireman's Rule barred recovery to Jonathan Hart for the injuries he sustained when he fell down an open stairwell as he approached a blazing building. In so doing, it usurps the role of the fact-finder and answers the ultimate question of recovery, which the trial court rightfully directed to the jury. I must respectfully dissent.

The Fireman's Rule preludes firefighters from recovering tort damages "for injuries sustained in the course of their employment." *Rivas v. Oxon Hill Joint Venture*, 130 Md. App. 101, 107, 744 A.2d 1076 (2000). The rule alters the traditional analysis for premises liability in that if it applies, as a matter of law, the property owner cannot be held to have owed the ordinary duty of care to the firefighter.

On the facts of this case, I would hold that there was a sufficient basis to conclude that the Fireman's Rule did not apply. The open stairwell was not an anticipated or foreseeable risk of Hart's job. He could expect the limited visibility, brought on by smoke, snow, and darkness, but *Tucker v. Shoemake*, 354 Md. 413, 731 A.2d 884 (1999), teaches us that such limited visibility does not relieve an owner of responsibility for an otherwise dangerous and unnatural condition upon the property. As Hart writes in his appellate brief, both he and the officer in *Tucker* were "injured while making a tactical approach to a building wherein a dangerous situation existed." Neither man could be held to have expected that an opening in their path would impede their safety mission.

Conversely, the open stairwell should not be likened to an open elevator shaft. The stairwell was open before the fire in the same way it was open during the fire. An elevator shaft, on the other hand, usually is open during a fire because of the fire itself; elevators are programmed to stop working when an alarm is triggered. Firefighters are trained to expect the possible hazard of an open elevator shaft, but they cannot be prepared for every open hazard that exists on a property, irrespective of the fire.

Because, in my opinion, the Fireman's Rule did not apply, Swaroop owed Hart a duty of ordinary care. *See Rivas*, 130 Md.App. at 111, 744 A.2d 1076. The succeeding questions of whether there was breach, causation, and damages were issues for a jury to resolve. It was entirely correct, then, for the trial court to deny Swaroop's motion for summary judgment and motions for judgment because they wrongly encouraged the court to withdraw these questions from the jury's

purview. Summary judgment is appropriate when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *See* Md. Rule 2–501(e); *see also Rivas*, 130 Md.App. at 106, 744 A.2d 1076. Here, the jury could read the evidence to find a breach, or not find a breach, to find a causal link, or not, so Swaroop certainly was not entitled to judgment as a matter of law.

Likewise, "[a] judge must grant a civil defendant's motion for judgment as a matter of law if the plaintiff failed to present evidence that could persuade the jury of the elements of the tort by a preponderance of the evidence." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 270, 841 A.2d 828 (2004) (emphasis deleted). In ruling upon a motion for judgment during a jury trial, the judge must "consider all evidence and inferences in the light most favorable to the party against whom the motion is made." Md. Rule 2–519(b). Given these standards, it would have been inappropriate for the court to grant the motions and relieve the jury of its obligation to sift through the credible evidence presented by the parties.

For the same reasons, I would answer "yes" to Swaroop's fourth question presented, that is whether the jury's verdict conformed to the evidence. I also read no reversible error in the court's instruction to the jury, as alleged in the third question presented by appellee.

Undoubtedly, this is a close case. My departure from the majority is in its decision to apply the fireman's rule and usurp the jury's function in making the final call on whether Hart should be entitled to recover from the motel owner. The jury was in the best position to make that call, and we do no service to litigants or our own precedents when we interfere with that special jury function. I would uphold the trial court's actions and affirm the jury award.