870 A.2d 157

Jonathan D. HART, et ux.

v.

SHASTRI NARAYAN SWAROOP, INC.

No. 89, Sept. Term, 2004.

Court of Appeals of Maryland.

March 14, 2005.

Mark C. Miller (William J. Blondell, Jr., William J. Blondell, Jr., Chartered, on brief), Baltimore, for petitioners.

David S. Goldberg, Hunt Valley (C. William Michaels, Baltimore, on brief), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

CATHELL, J.

This case arises from a claim sounding in tort brought by firefighter Jonathan D. Hart and his wife, Sarina Hart, petitioners, in the Circuit Court for Baltimore County, against Shastri Narayan Swaroop, Inc., respondent, the owner and operator of the Regal Inn on Pulaski Highway in Baltimore County. The impetus of petitioners' claim, which was filed on June 30, 2000, was an injurious fall Hart suffered on January 25, 2000, while responding to a fire at the Regal Inn.

On August 20, 2001, subsequent to the completion of discovery, respondent filed a motion for summary judgment, claiming that the petitioners, as a matter of law, were precluded from bringing the action pursuant to the fireman's rule.[1]

---

1. We described the fireman's rule as it exists in this State in *Tucker v. Shoemake*, 354 Md. 413, 419, 731 A.2d 884, 887 (1999):

> "Under Maryland common law, the Fireman's Rule provides that 'firemen and police officers generally cannot recover for injuries attributable to the negligence that requires their assistance.' *Flowers v. Rock Creek Terrace Ltd. Partnership*, 308 Md. 432, 447, 520 A.2d 361, 368 (1987).
> 'A fireman or police officer may not recover if injured by the negligently created risk that was the very reason for his presence on the scene in his occupational capacity. Someone who negligently creates

On November 5, 2001, following a hearing, the circuit court denied respondent's motion for summary judgment.

The case was tried before a jury beginning on March 10, 2003. At the close of petitioners' case, respondent moved for judgment. The circuit court denied respondent's motion. At the close of the evidence, respondent renewed its motion but it was again denied by the circuit court. On March 12, 2003, the jury returned a verdict in favor of petitioners as against respondent and awarded damages in the amount of $454,396.43. The judgment was entered on March 13, 2003.

Respondent thereafter filed an appeal to the Court of Special Appeals. On July 19, 2004, the intermediate appellate court issued its opinion, *Shastri Narayan Swaroop, Inc. v. Hart,* 158 Md.App. 63, 854 A.2d 269 (2004), holding that the fireman's rule was applicable to petitioners' claim and "the circuit court therefore erred in denying [respondent's] motion for summary judgment and motions for judgment...." *Id.* at 66, 854 A.2d at 271 (alteration added).

On September 1, 2004, petitioners filed a Petition for Writ of Certiorari to this Court. On November 12, 2004, we granted the petition. *Hart v. Swaroop,* 383 Md. 569, 861 A.2d 60 (2004). Petitioners present a sole question for our review, which we rephrase for the sake of clarity as follows:

> Does the fireman's rule prevent a firefighter from recovering damages from a property owner for injuries suffered when the firefighter fell into an open stairwell while performing his firefighting duties?

We hold that the fireman's rule is applicable to the circumstances surrounding Hart's injury and, therefore, the fireman's rule bars petitioners' tort claim against the respondent motel owner. As we shall discuss, Hart's injuries, which he

---

the need for a public safety officer will not be liable to a fireman or policeman for injuries caused by this negligence.'

*Id.* at 447–48, 520 A.2d at 368. This public-policy grounded doctrine 'is based on a relationship between firemen and policemen and the public that calls on these safety officers specifically to confront certain hazards on behalf of the public.' *Id.* at 447, 520 A.2d at 368."

sustained while in the performance of his occupational duties, were the direct result of a fall occasioned by his inability to perceive his surroundings due to the voluminous amount of smoke emanating from the motel fire.

### Facts

In the early morning hours of January 25, 2000, a fire broke out at the Regal Inn, a motel located at 8005 Pulaski Highway in Baltimore County and owned and operated by respondent. Upon being alerted that smoke was coming from one of the motel rooms, the motel's night manager promptly pulled the motel's fire alarm and called 911.

At the time of the January 25th fire at the Regal Inn, Hart was employed as a Lieutenant with the Baltimore County Fire Department and assigned to Station Number 15, Eastview. Hart was one of many firefighters of the Baltimore County Fire Department that responded to the call received at approximately 4:30 a.m. concerning the fire at the Regal Inn. His assigned functions at the scene of the fire were search and rescue, and ventilation.

Upon arrival at the Regal Inn, the firefighters encountered a "heavy volume of fire on the second floor extending onto the roof" and heavy smoke conditions making visibility minimal. Hart was immediately ordered to perform search and rescue efforts on the "Delta" side of the building.[2] After gathering his necessary firefighting equipment, including a thermal imaging camera,[3] Hart proceeded to the "Delta" side of the Regal Inn.

---

**2.** For organizational purposes at the Regal Inn fire scene, and most fire scenes in general, the fire department designates the address side of the building as "Alpha" with the remaining sides of the building designated, in a clockwise fashion, as "Bravo," "Charlie" and "Delta."

**3.** As described in petitioner's brief:

"A thermal imaging camera is a device that detects differences in temperature [and] is used to search for victims and to determine the location of the fire. The operator of the camera looks through a small screen similar to a three inch black and white television screen and can see a silhouette with any temperature change within one

After making his way to a parking lot on the "Delta" side of the Regal Inn, Hart sought a way to access the second floor of the motel to search for any trapped occupants. In order to see better through the smoke, which by that time had enveloped the area in a shroud of darkness, he activated his thermal imaging camera and through it viewed the immediate areas of the building. Hart saw that heat from the fire was venting from the second floor but that there appeared to be no fire on the first floor of the motel. He then searched for a stairway to the second floor and saw through the thermal imaging camera what he believed to be a stairway to the second floor. Moving toward the perceived stairway, Hart removed his thermal imaging camera and used a railing on the side of the building to guide his way through the dense smoke. Hart admittedly was moving very slowly at the time because of the poor visibility and his concerns over tripping over a curb in the parking lot. As he continued to walk alongside the railing, Hart suddenly found himself stepping into an open space and, unable to prevent his descent, fell several feet into the well of an open and unguarded stairwell. Hart suffered severe injuries as a result of the fall.

## Discussion

Hart asks this Court to decide whether he can recover against respondent for the injuries he suffered as a result of his fall while performing his duties as a firefighter. The answer to this question is to be arrived at by an examination of what has come to be known as the "fireman's rule" and whether this common-law rule, which generally prevents firefighters from "recovering tort based damages inflicted by a negligently created risk that required their presence on the scene in their professional capacity," applies. *Crews v. Hollenbach*, 358 Md. 627, 642, 751 A.2d 481, 489 (2000).

---

tenth of a degree from up to 500 feet away. The operator views an area in a stationary position, then lowers the camera and moves in the direction viewed." [Alteration added.]

The fireman's rule was first formulated in 1892 by the Illinois Supreme Court in *Gibson v. Leonard*, 143 Ill. 182, 32 N.E. 182 (1892). The Illinois Supreme Court was faced with a situation where, while firefighters were on the scene of a fire, a rope on a freight elevator in the burning building snapped, dropping a heavy counterweight, which then fell on a firefighter's leg, causing so substantial an injury to the firefighter's leg that it had to be amputated above the knee. Utilizing the theory of premises liability and finding that the injured firefighter was to be classified as a mere licensee and not an invitee, the court barred the firefighter's action against the landowner, stating that "the general rule is that the licensor assumes no duty to the licensee, except the duty to refrain from affirmative or willful acts that work an injury." *Id.* at 184, 32 N.E. 182. As this Court has recognized, "[o]ne explanation ... for classifying firemen ... as licensees upon premises, rather than invitees, is because they are likely to enter at unforeseeable times, upon unusual parts of the premises, and under circumstances of emergency, where care in preparing for the visit cannot be expected and a duty to make the premises reasonably safe for them at all times would constitute a severe burden." *Sherman v. Suburban Trust Co.*, 282 Md. 238, 242–43, 384 A.2d 76, 79 (1978).

Maryland courts first adopted the fireman's rule in 1925 in the case of *Steinwedel v. Hilbert*, 149 Md. 121, 131 A. 44 (1925). In *Steinwedel*, a member of a "fire insurance salvage corps," [4] who this Court determined was "in no more favorable a position, under common law principles, than a fireman," *id.* at 124, 131 A. at 45, was called to the scene of a fire and was injured when he fell into an open elevator shaft on the premises that he claimed was "negligently left open and unguarded." *Id.* at 122, 131 A. at 45. In its discussion as to whether the firefighter's negligence claim could proceed as

---

**4.** As this Court noted in *Steinwedel*, a member of the salvage corps was "charged with the duty of saving property endangered by fire." *Steinwedel*, 149 Md. at 122, 131 A. at 45.

against the owners and occupants of the premises, this Court initially stated that:

> "according to the great weight of authorities the general rule of common law is that a fireman entering premises to put out fire is a licensee only, and not an invitee, and that the owner or occupant of the premises is not under any duty of care to keep his premises prepared and safe for a fireman.... 'He must take the property as he finds it, and is entitled only not to be led into danger, "something like fraud." ' "

*Id.* at 123–24, 131 A. at 45 (citations omitted). Observing that "there is no allegation that the elevator shaft was opened in or near a way prepared and set apart as a passage way, and the case is not rested upon any such concealment or deceptive appearance, 'something like fraud,' put in the path of the plaintiff, as would render the danger a trap," this Court held that the firefighter's claim was thus barred by the fireman's rule. *Id.* at 125, 131 A. at 46. This Court based its adoption of the fireman's rule by classifying firefighters according to entrant-based categories of premises liability first recognized by the Illinois Supreme Court in *Gibson* and finding that firefighters at the scene of a fire are to be considered licensees on the premises.

Forty years later, in *Aravanis v. Eisenberg*, 237 Md. 242, 206 A.2d 148 (1965), we once again had an opportunity to examine the basis and application of the fireman's rule in Maryland. In that case, Aravanis, a firefighter who had responded to a fire at Eisenberg's home, was severely burned by a sudden flash while he was fighting the fire. The fire started when Eisenberg, while working in his basement, knocked a tool off a work bench, causing the tool to fall down onto a jug containing acetone. The jug then burst and the acetone spilled over the basement floor, coming into contact with the pilot light of a hot-water heater nearby and igniting. Later, after Aravanis and other firefighters were on the scene fighting the fire, an explosion ensued that injured Aravanis as he was attempting to extinguish the fire with a water hose. Aravanis argued that "he was injured not because of the fire

itself but because the failure of the [Eisenbergs] to keep the acetone in a proper container was negligence operative apart from the fire, and that this negligence caused the injury." *Id.* at 253–54, 206 A.2d at 154 (alteration added).

In our discussion as to whether Aravanis could recover damages against the Eisenbergs, notwithstanding the fireman's rule, we first noted the entrant-based classification of firefighters set forth in *Steinwedel, i.e.,* "[i]n general, the fireman has been held to be only a licensee." *Aravanis,* 237 Md. at 248, 206 A.2d at 151. We did, however, acknowledge a growing undercurrent of dissatisfaction with the fireman's rule being based on a premises liability theory, observing that:

> "In some jurisdictions there has been a change in the legal principles held applicable.... The subject is one in which the law is developing by way of intensive analysis and modification of the applications of rigid concepts in the light of the particular circumstances involved. The criticism of what was formerly the almost universal rule is based essentially upon making the determination of what is justice between the parties depend upon cramming firemen into the inflexible legal category of licensee. Property owners owe licensees only the duties of abstaining from wilful or wanton injury and entrapment. If a fireman is to be regarded as an invitee, the property owner owes him a duty to see that the premises are reasonably safe and to warn him of any dangerous condition known, or which reasonably should have been known to the property owner but not to the fireman.
>
> · · ·
>
> "It is when the fireman sustains injuries after the initial period of his anticipated occupational risk, or from perils not reasonably foreseeable as part of that risk, that the justice of continuing to regard him as a licensee only is questioned."

*Id.* at 248–52, 206 A.2d at 151–54 (citations omitted). Thus, we recognized that not every injury visited upon firefighters while they are performing their firefighting duties shall be

noncompensable in an action for damages against the property owner or occupant.

In *Flowers v. Rock Creek Terrace Ltd. Partnership*, 308 Md. 432, 520 A.2d 361 (1987), growing increasingly uncomfortable with the theory of premises liability as the underlying basis for the fireman's rule, this Court broke from our previous reliance on a premises liability theory and established that the proper basis for the rule is *public policy*. In *Flowers*, David Flowers, a firefighter, suffered severe injuries when he fell twelve stories down an open elevator shaft while responding to a fire in an apartment building. Flowers apparently did not realize the dangerous open elevator shaft because the lobby area on the twelfth floor had become "filled with smoke making it nearly impossible to see." *Id.* at 436, 520 A.2d at 363. He thereafter filed a negligence suit against the owner of the apartment building, the company hired to provide security services for the apartment building and the manufacturer of the elevator.

In considering whether the fireman's rule barred Flowers's claim for damages, we stated:

"In sum ... the owner or occupant of the premises is not under a duty of care to keep the premises prepared and safe for a fireman. *The owner or occupant of the premises must, however, abstain from willful or wanton misconduct or entrapment. This encompasses a duty to warn of hidden dangers, where there was knowledge of such danger and an opportunity to warn.* Additionally, in some circumstances, when a fireman is outside of the anticipated occupational risk of fighting a fire he may be entitled to ordinary due care.

"The above-cited Maryland cases,[5] in our opinion, applied the proper standard of care owed to firemen and policemen,[6] and the decisions were correct. Nevertheless, the

---

5. The Court had examined several cases pertaining to the fireman's rule in Maryland, including both *Steinwedel* and *Aravanis*.

6. The fireman's rule has also been held to be applicable to police officers. *See Sherman v. Suburban Trust Co.*, 282 Md. 238, 384 A.2d 76

use of a premises liability rationale would not seem to be entirely appropriate for resolving the issues in cases like this.... [A]lthough prior cases sounding in premises liability law had begun to define the extent to which firemen are deemed to anticipate certain occupational risks, the premises liability rationale itself does not provide a basis for delimiting the duties owed to firemen. Instead, it is an analysis of the relationship between firemen and the public whom they serve which best explains the fireman's rule.

. . .

"With few exceptions, courts elsewhere have retained the fireman's rule but have based the rule on public policy considerations. Some of these courts emphasize a public policy somewhat analogous to the assumption of risk doctrine applied in negligence cases. *Firemen are engaged by the public to encounter risks inherent in firefighting; they assume those risks, and therefore they should not recover for fire-related injuries. . . .*

. . .

"In addition, some courts have pointed out that firemen receive compensation, such as salary, workers' compensation, and special injury compensation, to fight fires for the public, and that taxpayers should not have to pay such moneys for the firefighting service and then be subject to liability if they call upon the service....

"We agree that the fireman's rule is best explained by public policy. As pointed out in *Aravanis* ... it is the nature of the firefighting occupation that limits a fireman's ability to recover in tort for work-related injuries. Instead of continuing to use a rationale based on the law of premises liability, we hold that, as a matter of public policy, firemen and police officers generally cannot recover for injuries

(1978); *Flood v. Attsgood Realty Co.,* 92 Md.App. 520, 608 A.2d 1297 (1992).

attributable to the negligence that requires their assistance. . . .

"We reiterate, however, that firemen and policemen are not barred from recovery for all improper conduct. *Negligent acts not protected by the fireman's rule may include failure to warn the firemen of pre-existing hidden dangers where there was knowledge of the danger and an opportunity to warn.* They also may include acts which occur subsequent to the safety officer's arrival on the scene and which are outside of his anticipated occupational hazards. As indicated by this Court in *Aravanis,* the fireman's rule should not apply 'when the fireman sustains injuries after the initial period of his anticipated occupational risk, or from perils not reasonably foreseeable as part of that risk[.]' In these situations a fireman or policeman is owed a duty of due care. . . ."

*Flowers,* 308 Md. at 443–48, 520 A.2d at 366–69 (citations omitted) (emphasis added) (footnotes added) (footnotes omitted).

Applying the fireman's rule, which now had as its basis public policy, to Flowers's negligence claim relating to the danger of the elevator system, we stated that:

"Although these are not allegations of negligence in the creation of the fire that originally brought the firemen to the apartment building, an accident involving an open elevator shaft nevertheless is within the range of the anticipated risks of firefighting. It is common knowledge that stairwells are to be used instead of elevators in case of fires; trained firemen must know of the risk that a fire may cause an elevator to malfunction. *Moreover, an open elevator shaft is not a 'hidden danger' of which firemen must be warned. In Flowers's declaration, he alleged that he was evacuating tenants from a 'hallway of a building where there was heavy smoke.' An open elevator shaft concealed by the smoke of the fire is not a hidden danger in the sense of an unreasonable danger that a fireman could not anticipate upon attempting to perform his firefighting duties."*

*Flowers*, 308 Md. at 451–52, 520 A.2d at 370–71 (citation omitted) (emphasis added).

 In the case *sub judice*, it is obvious that Hart was in the midst of his firefighting duties at the moment he fell and was injured; he was making his way through heavy smoke to attempt to find a path to the second floor of the motel in order to locate any trapped occupants. Therefore, Hart can only escape the barring effect of the fireman's rule if he can show that his injury occurred "after the initial period of his antici- pated occupational risk" or because of a "pre-existing hidden danger[ ] where there was knowledge of the danger and an opportunity to warn." *Flowers*, 308 Md. at 448, 520 A.2d at 369.

We can quickly dispose of any argument that Hart's injury occurred after the initial period of his anticipated occupational risk while he was attempting his search and rescue efforts. When Hart was making his way through the thick smoke in an attempt to gain access to the second floor of the motel, he was unquestionably in the process of performing the duty for which he was ordered—to rescue any motel patrons trapped by the fire. Thus, Hart's injury occurred "during the period of anticipated occupational risk." As we stated in *Crews v. Hollenbach*, 358 Md. 627, 751 A.2d 481 (2000):

> "In our more contemporary fireman's rule cases, a sec- ondary rationale for the existence of the rule is found.... It focuses not on the public policy considerations of a firefight- er as a public servant, *but on firefighting as an inherently dangerous occupation.* The fireman's rule is based in part on the notion that when an occupation exists wholly or partially for the purpose of confronting dangers posed to the public, it is inappropriate to allow the worker to recover for injuries resulting from the very purpose for which he or she is employed. Stated differently, a firefighter who is injured by a risk inherent in the task of firefighting may be barred from asserting claims for those injuries because it is the firefighter's duty to deal with fires and he or she cannot recover damages caused by the reason that made his or her employment necessary. *The assumption of the risk analy-*

*sis intrinsic in the fireman's rule cases focuses on the reasonably identifiable and inherent risks assumed by firefighters when they accept employment in an ostensibly dangerous occupation."*

*Crews,* 358 Md. at 653–54, 751 A.2d at 495 (citations omitted) (emphasis added). Hart's own memorandum in support of his response to respondent's motion for summary judgment evidences the fact that he was performing his firefighting duties at the time of his injury and admits that his visual perception of his surroundings was greatly diminished by the smoky conditions:

> "Upon arrival at the Regal Inn, the firefighters encountered heavy fire and smoke conditions. *The building was not visible upon arrival due to the heavy smoke.* . . .
>
> . . .
>
> "Mr. Hart, standing in the parking lot on the side of the building, *sought access to the second floor of the motel to search for trapped victims.* Mr. Hart, *as he could not otherwise see because of darkness and smoke,* viewed the building through the thermal imaging camera and determined that there was no fire below the second floor. He then looked for a stairway to access the second floor. He saw what he believed to be a stairway and walked towards the building. He did not look into the thermal imaging camera once he began walking. A railing extended along the walkway on the side of the building. *Mr. Hart used the railing as a guide into an otherwise blind path as he walked with his equipment."* [Emphasis added.]

We must next consider whether the open stairwell existed as a "pre-existing hidden danger" to Hart at the time of his injury. As stated, a pre-existing hidden danger in the context of the fireman's rule suggests a danger that exists because of "concealment or deceptive appearance, 'something like fraud,' put in the path of the [firefighter], as would render the danger a trap." *Steinwedel,* 149 Md. at 125, 131 A. at 46 (alteration added). Hart claims that the open stairwell at issue "was a

dangerous condition that pre-existed[ ] and was independent of the fire," thus barring respondent's reliance on the fireman's rule. We disagree.

The duty to warn of a pre-existing hidden danger presupposes knowledge of that danger by the property owner or occupant. While it is undisputed that the manager of the Regal Inn was on the premises at the time the firefighters arrived and the firefighters were at no time warned about the existence of the stairwell, there apparently was no reason for the manager to know or have reason to know that the stairwell constituted a hidden danger. The record indicates that respondent had *never* been cited for any violations relating to the stairwell existing in a dangerous condition prior to January 25, 2000. In fact, it was only *after* Hart had been injured while performing his firefighting duties that the Baltimore County Fire Department posted a complaint, dated January 31, 2000, about the stairwell at issue and conducted an inspection, the report of which was dated February 9, 2000, resulting in a finding that respondent needed "to place and maintain a guardrail on top of steps so as to protect any person from falling into stairwell." Such an after-the-fact notice to respondent, without more, is not enough to show that respondent had knowledge that the stairwell existed as a "pre-existing hidden danger" on the motel property. If it was indeed such an *obvious* danger to anyone on the motel property, it likely would have been observed and cited during one of several earlier inspections.

Furthermore, the existence of the stairwell was made apparent during normal nighttime conditions by a series of fluorescent lights. Those lights, however, were not bright enough to penetrate the thick buildup of smoke that had accumulated during the early morning hours of January 25, 2000. In fact, Captain John P. Ryan, another firefighter at the scene, testified at trial that the heavy smoke conditions at the motel made for "poor visibility," so much so that the quartz lights used by the firefighters to shine toward the motel to provide for better visibility were unable to penetrate the curtain of smoke. Therefore, it was only under the

conditions existing during the early morning hours of January 25, 2000, when voluminous amounts of smoke from the conflagration had inhibited Hart's ability to be aware of the stairwell before him, that the stairwell could be said to have been hidden from him. *This, however, does not mean that it existed as a hidden danger, thus making the fireman's rule inapplicable.* There was no active concealment or deceptive appearance of the stairwell effectuated by respondent. The concealment of the stairwell was a direct result of the secondary effects of the fire itself, *i.e.,* the smoke. As we stated in *Flowers,* in the case of a firefighter's fall into an elevator shaft concealed by smoke, "an open elevator shaft is not a 'hidden danger' of which firemen must be warned.... *An open elevator shaft concealed by the smoke of the fire is not a hidden danger* in the sense of an unreasonable danger that a fireman could not anticipate upon attempting to perform his firefighting duties." *Flowers,* 308 Md. at 451–52, 520 A.2d at 370 (emphasis added). We find there to be no appreciable difference for the purpose of applying the fireman's rule to the situation involved in *Flowers* and the one now before us. Both cases involve dangers that were made imperceptible by the very reason the firefighters were in the area of the dangers—the fire and its resultant smoke. As with the open elevator shaft in *Flowers,* we do not find that an open stairwell made imperceptible by smoke constitutes a pre-existing hidden danger on the motel property, nor was it a danger that a firefighter could not reasonably anticipate.

Hart contends, however, that *Flowers* is inapposite from the situation in the case *sub judice,* in that "[a] trained fireman inside an apartment building on fire could reasonably anticipate an elevator malfunctioning as a result of a fire [ ] leaving an open shaft. A fireman not yet inside a motel building fire could not reasonably anticipate an open and unguarded stairwell positioned adjacent to the parking lot of the motel. Especially when the stairwell ... had absolutely nothing to do with the fire." Contrary to Hart's assertion, the fire played a key part in bringing about the fall causing him injury—the smoke from the fire inhibited his ability to notice that the

stairwell was in his path. When a firefighter enters upon property for the purposes of fighting a fire, he or she must generally bear the risk of being injured by causes relating to or arising out of the fire. Hart's inability to perceive an open stairwell before him as he made his way to the motel building was *directly related* to smoky conditions from the fire itself.

Hart contends that two relatively recent opinions, one by this Court and one from the Court of Special Appeals, lend support to his claim that the open stairwell existed as a pre-existing hidden danger at the time of his injurious fall. He first points to our opinion in *Tucker v. Shoemake*, 354 Md. 413, 731 A.2d 884 (1999), which concerned a police officer who sustained injuries when he fell through an improperly seated manhole cover as he approached a trailer home during the nighttime in response to a domestic dispute. We noted in our opinion that the police officer "said that the lighting in the area was 'minimal.' He was carrying his flashlight, but he did not turn it on for his own protection." *Id.* at 415, 731 A.2d at 885. The injured officer thereafter sued the owner of the trailer park for his injuries. The circuit court granted summary judgment in favor of the trailer park owner, ostensibly because of the fireman's rule. Prior to consideration on appeal by the Court of Special Appeals, we issued a writ of certiorari on our own motion to consider the following question: " 'Did the circuit court err in granting summary judgment on the ground that the Fireman's Rule precluded [the police officer's] recovery?' " *Id.* at 418, 731 A.2d at 887 (alteration added).

We began our discussion in *Tucker* by explaining the fireman's rule as it exists in Maryland, citing our decision in *Flowers* and its move toward a public-policy basis for the rule. We held, however, that:

"This case is not one in which the Fireman's Rule applies to preclude recovery. Officer Tucker was not injured by the negligently-created risk that occasioned his presence at the trailer park. He was at the trailer park in response to a domestic dispute call, whereas he was injured as a result of stepping on the allegedly improperly seated metal cover to

the underground valve compartment. Thus, the negligence alleged to have caused Officer Tucker's injuries was *independent and not related* to the situation requiring his services as a police officer.

. . .

"Conversely, had Officer Tucker suffered some injury *due to a negligent condition in the trailer where the domestic dispute was or had been in progress, the Fireman's Rule likely would apply.*"

*Tucker,* 354 Md. at 419–21, 731 A.2d at 887–88 (emphasis added).

Hart claims that *Tucker* applies because, in both the case *sub judice* and in *Tucker,* "[b]oth men stepped into a dangerous opening maintained by the owner of the premises and were injured. Both dangerous openings were completely independent of the reason that each was called to the scene. Both dangerous conditions were hazards that could not reasonably be anticipated as part of each man's occupation." This contention is wrong. The basis for our holding the fireman's rule inapplicable in *Tucker* was that the police officer's injury was "independent and not related" to the purposes for which he was at the trailer park. In other words, the officer's fall through the manhole cover was not directly caused in any way by the domestic dispute allegedly occurring in the trailer home he was approaching. In Hart's case, however, the fire, with its resultant smoke, *was the reason* that he was unable to perceive the open stairwell as he approached the motel in furtherance of his firefighting duties.

Hart's reliance on the Court of Special Appeals' decision in *Rivas v. Oxon Hill Joint Venture,* 130 Md.App. 101, 744 A.2d 1076, *cert. denied,* 358 Md. 610, 751 A.2d 471 (2000), is also unavailing. That case involved a situation where a deputy sheriff slipped and fell on a patch of ice as he was en route to serving a subpoena to a witness in a landlord-tenant case. Recognizing our holding in *Tucker,* the intermediate appellate court found that the police officer's personal injury action

against the owner of the apartment complex was not barred by the fireman's rule. As the Court of Special Appeals stated:

"In the case *sub judice,* as in *Tucker,* the Fireman's Rule did not apply. To be sure, as a deputy sheriff for Prince George's County, Rivas was a law enforcement officer ... and his duties as such required him to confront certain risks on behalf of the public. Under the Fireman's Rule, he was deemed to have accepted the risks inherent in those duties by accepting the position of deputy sheriff and the compensation of his office. The purpose for Rivas's visit to the Oxon Hill Apartments was to perform the duty of serving a subpoena. The negligence that allegedly caused his injury, however, was unrelated to the situation that required his services. Rivas was injured on account of an allegedly defective condition of the common area parking lot of the apartment complex, across which he walked on his approach to the apartment unit in which he intended to serve the subpoena. *He was not in the process of serving the subpoena when he was injured and his injuries were not brought about by the activity of subpoena serving.* Because Rivas's injuries did not arise out of the very occasion for his employment, *i.e.,* the serving of the subpoena, the Fireman's Rule was inapplicable."

*Rivas,* 130 Md.App. at 108–09, 744 A.2d at 1080 (citation omitted) (emphasis added).

Thus, in *Rivas,* the intermediate appellate court allegedly followed our ruling in *Tucker,* allowing for a suit in tort to proceed notwithstanding the fireman's rule where the police officer sustained injuries *independent and not related* to his professional purpose for being at the apartment complex. As we stated, Hart's injury occurred during the time when he was performing his job duties as a firefighter and occurred as a result of the fire and smoke. Therefore, *Rivas,* like *Tucker,* is dissimilar to the case *sub judice.* Neither case is contrary to our holding here.

Our holding is bolstered by other states' factually-similar cases concerning injuries to firefighters and application of the

fireman's rule. In *Baxley v. Williams Construction Co.*, 98 Ga.App. 662, 106 S.E.2d 799 (1958), the Georgia appellate court considered whether a firefighter could bring a claim for personal injuries suffered when he fell into an unlighted and open excavation for a sewer at a construction site where a fire had broken out. The court initially noted, with the basis of the fireman's rule then being premises liability, that:

"The basic reason for the [fireman's] rule is that it is impossible to forecast the precise place where or time when the fireman's duties may call him, and to require an owner or occupier of premises to exercise at all times the high degree of care owed to an invitee in order to guard against so remote and unpredictable an injury would be an intolerable burden which it is not in the best interest of society to impose."

*Id.* at 805 (alteration added). The appellate court then stated that:

"There was no duty on the defendants to keep the premises up to any given standard of safety except that they must not contain pitfalls, mantraps and things of that kind.... The opening in the manhole was not alleged to have been concealed by the concrete blocks, ripped boards and other building debris lying about it. *The petition shows that the excavation and manhole was concealed from sight solely by the darkness of the night. This is not wanton conduct nor a mantrap.*"

*Id.* (citations omitted) (emphasis added).

In the case *sub judice*, Hart's perception of his surroundings while at the Regal Inn was not only inhibited by the smoke enveloping the area but also due to the fact that it was still dark outside when the firefighters arrived at the scene. This darkness, coupled with the thick smoke, made the open stairwell that Hart fell into at least as imperceptible as the open excavation in *Baxley*. Even under regular nighttime conditions, it does not appear that the open stairwell would have been concealed from Hart; the use of lights in the parking lot area, the raised brick embankment surrounding

the sides of the stairwell, as well as the aforementioned lights particular to the open stairwell, would reasonably have alerted an ordinary person to the stairwell's existence.

In *Baker v. Otis Elevator Co.*, 78 A.D. 513, 79 N.Y.S. 663 (N.Y.App.Div.1903), the New York appellate court had before it a case involving a firefighter seeking to recover damages for injuries sustained when he fell into an open elevator shaft while performing his firefighting duties. Bearing a striking resemblance to the facts now before us, the court explained the reason for the firefighter's fall:

> "The [building] was *filled with smoke,* and the [firefighter] says he could just see a streak of light from the vicinity of the freight elevator where he fell, and while he was thus proceeding, with what he says he thought was great care, he stepped into the elevator well and fell a distance of several feet, sustaining the injuries for which he seeks recovery. The elevator was used for carrying freight, and it appears that while there was a guard rail on one and perhaps on three sides of the same there was none at the side where the [firefighter] was approaching, and the contention of the [firefighter] is that the defendant owed him a duty of protecting this elevator well."

*Id.* at 664 (alterations added) (emphasis added). The appellate court upheld the trial court's dismissal of the case, stating that:

> "[I]t cannot be the rule of law in this state that every manufacturer is bound to leave his factory at night in such a condition that no one entering it for the purpose of putting out a fire in the darkness will be liable to encounter dangers.... [I]t would be a harsh rule to hold that a manufacturer owed the duty to a fireman to anticipate and guard against any possible accident by a fall through a hole in the floor...."

*Id.*

In conclusion, the accumulation of smoke during a fire and the resulting limitation of visibility for a responding firefighter is a type of hazard faced by firefighters in their ordinary

534

duties. Hart was present at the scene of the fire in order to fulfill his duty to the public as a firefighter. It was during the performance of his inherently dangerous occupation that he was injured after falling into a stairwell that he could not see on account of the smoke. This is the kind of injury that the fireman's rule is meant to bar.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONERS.**