963 A.2d 222

**Richard WHITE**

v.

**STATE of Maryland.**

**No. 1960, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

Dec. 3, 2008.

Reconsideration Denied Feb. 4, 2009.

Henry L. Belsky (Schlachman, Belsky & Weiner on the brief, Baltimore, Kimberly A. Alley of Littleton, MA, on the brief), for appellant.

Carl N. Zacarias (Steven M. Sullivan, Donald E. Hoffman, Douglas F. Gansler, Attorney General on the brief), Baltimore, for appellee.

Argued before KRAUSER, C.J., SALMON and JAMES, S. GETTY, Retired, Specially Assigned, JJ.

SALMON, J.

Richard White was a member of the Thurmont Police force on October 24, 2002. On that date he was very severely injured when, in the course of his police duties, the vehicle he was driving went out of control and struck a tree. Officer White brought a suit for negligence in the Circuit Court for Frederick County and named as defendants William Henrickson, a State police communications officer, and Henrickson's employer, the State of Maryland.[1]

Trial commenced on September 18, 2007. At the conclusion of the evidentiary phase of the case, the trial judge granted the defendants' motion for judgment for two reasons: 1) recovery was barred based on the "Fireman's Rule" and 2) even if the claim was not barred by that Rule, White could not recover because, as a matter of law, his injuries were caused, in part, by his own contributory negligence. In this appeal White claims that the trial judge erred in granting judgment in favor of Henrickson and the State.

# I

## The Trial[2]

---

**1.** White's complaint set forth several other causes of action and named several other defendants, in addition to the State of Maryland and William Henrickson. None of these other defendants or causes of action are relevant to this appeal.

**2.** The facts recounted in Part I of this opinion are set forth in the light most favorable to Officer White, the party who opposed defendants'

On the morning of October 24, 2002, Craig Main[3] was working at the Ace Hardware store in Thurmont, Maryland when he noticed two men. The first man engaged Main in conversation while the second wandered through the store. Shortly thereafter, the second man was observed running from the store carrying a "tool power pack" worth $200.00. The man with whom Main had been talking ran into the parking lot and jumped into a get-away vehicle with the thief. Main stuck his hand in the vehicle through an opening in the window and told the men to give the merchandise back and that if they did so he would not call the police. With Main's arm still in the vehicle, the driver backed the car up, which required Main to hold on to the car in order to avoid being run over. Main finally let go and the two men sped away.

Main called 911 and was connected with the Frederick County 911 dispatcher. Main said: "I need the police. . . ., I just got robbed." He was then transferred to William Henrickson, a communications officer for the Maryland State Police. The following exchange then occured:

> MR. HENRICKSON: "Maryland State Police in Frederick CPO Henrickson, may I help you?"
>
> MR. MAIN: "Yeah, I'm in Thurmont at the Ace Hardware. I just got shafted. A guy just robbed it."
>
> MR. HENRICKSON: "At the Ace Hardware Store?"
>
> MR. MAIN: "Yeah."

---

motion for judgment. *See* Maryland Rule 2–519(b), which reads: "When a defendant moves for judgment at the close of the evidence offered by the plaintiff in an action tried by the court, the court may proceed, as the trier of fact, to determine the facts and to render a judgment against the plaintiff or may decline to render judgment until the close of all the evidence." When a motion for judgment is made under any other circumstances, the court shall consider all evidence and inferences in the light most favorable to the party against whom the motion is made.

**3.** In appellee's brief the last name of the victim is spelled "Mayne" but in the trial transcript it is spelled "Main." We have adopted the spelling used in the trial transcript.

MR. HENRICKSON: "(One long beep.) Frederick (Inaudible-two words) cars a robbery just occurred at the Ace Hardware in Thurmont. 23–87 [4]

UNIDENTIFIED MALE: "In route."

MR. HENRICKSON: "Subject left towards Route 15 in a red Nissan, King, Mary, Zebra 9–8–0, KMZ 9–8–0."

UNIDENTIFIED MALE: "(Inaudible-two words) they headed towards 15?"

MR. HENRICKSON: "That's right they headed around Route, towards Route 15."

Henrickson did not make further inquiry of Main to determine the exact nature of the crime that was committed at the hardware store. He nevertheless told Officer White that: "an armed robbery just occurred at the Ace Hardware in Thurmont."

Officer White located the suspects and initiated pursuit. As he did so, the emergency lights on his police cruiser were activated and this, simultaneously, activated a dash board video camera. When Officer White's car caught up with the suspect's vehicle, the driver of the get-away vehicle did not stop. Instead, the driver tried to elude Officer White, as well as several other officers who joined in the pursuit. The dash board camera showed that Officer White pursued the suspects over mostly rural, two-lane roads, with no shoulder. The camera at no point captured the image of the suspects' vehicle, but it is clear from the video and the communications made by Officer White through his radio dispatches to Henrickson, that White was in sight of the vehicle at times throughout the chase.

During the pursuit, Officer White radioed to Henrickson a corrected description of the suspects' vehicle as a "red Toyota MR2." He also reported that he saw one of the occupants throw something out the window during the chase.

---

4. "23–87" was Officer White's call sign.

Approximately nine minutes after the chase began, Officer White approached a sharp turn to the left on Yellow Springs Road, a two-lane roadway with a speed limit of 35 mph. Three vehicles approached the curve in the opposite direction from Officer White. The first is visible on the camera and is shown approaching about two seconds before Officer White entered the curve. When the officer entered the curve, he initially remained in his lane of traffic, but lost control of his cruiser. His car then fish-tailed off of Yellow Spring Road and struck a culvert, then flew through the air and collided with a tree. The severe injuries received by Officer White in the crash made it impossible for him to recall the chase or any of the events that immediately preceded it.

At trial, Henrickson admitted that one of the cardinal rules of his profession, which was emphasized in his training, was that a communications officer, when talking to a victim, must determine whether the perpetrator is armed. He further acknowledged that it is the responsibility of a communications officer to relay accurate information to the police officers with whom he is communicating, regardless as to whether the officer makes follow-up inquiries. He conceded that sometimes relaying accurate information can make the difference between life and death. Additionally, Henrickson conceded, shoplifting from a hardware store, without any use of force, would qualify as a lower-priority call for responding officers than would a report that the suspect had used a weapon in the commission of a crime. Therefore, when a dispatcher states that a suspect is "armed," the importance of the call is greater and can be expected to cause responding officers to alter the manner in which they handle the call.

Officer White testified that he is trained to rely on the information supplied to him by the dispatcher and that it is improper for him to try and second guess the information he receives. Officer White further testified that, in determining whether to engage in a high-speed chase of a suspect, he must conduct a balancing test in which he evaluates the seriousness of the crime and the possibility that the suspect is a threat to the public against the danger of the pursuit. In conducting

such a balancing test, the more serious the crime or threat to the public, the more likely the need for a high-speed pursuit. Officer White was trained not to engage in a high-speed pursuit when a person was suspected only of shoplifting. On the other hand, he was trained to engage in high-speed pursuits to apprehend a fleeing armed robbery suspect. According to Officer White's testimony, if given an accurate report of the crime by Hemickson, Officer White would not have engaged in the high-speed pursuit that resulted in his severe injury.

Based on the evidence just summarized, it was Officer White's position at trial that Hemickson was negligent when he failed to find out from Main exactly what crime the suspects had committed. Mr. Hemickson was also negligent, it was alleged, when he told Officer White that the suspects had committed an armed robbery.

## II

The sole issue to be decided in this case is whether the trial judge erred in granting appellees' motion for judgment.[5] We shall hold that the trial judge correctly granted judgment in favor of appellees, based on the "Fireman's Rule." It therefore is unnecessary for us to decide whether recovery by Officer White was barred by his (alleged) contributory negligence.

## III

### Analysis

In *Southland v. Griffith*, 332 Md. 704, 713, 633 A.2d 84 (1993), the Court said:

---

5. When reviewing the grant of a motion for judgment, we assume the truth of all facts, together with all inferences that can be legitimately drawn from those facts, in the light most favorable to the party against whom the motion is made. *Orwick v. Moldawer*, 150 Md.App. 528, 531–32, 822 A.2d 506 (2003) (citation omitted). Consequently, if there is any evidence, no matter how slight, that is legally sufficient to generate a jury question, the trial judge will be reversed if he or she fails to submit the matter to the jury for its consideration. *Id.*

Our cases hold that the doctrine known as the Fireman's Rule generally prevents fire fighters and police officers injured in the course of their duties from recovering tort damages *from those whose negligence exposed them to the risk of injury.* See *Flowers v. Rock Creek Terrace,* 308 Md. 432, 520 A.2d 361 (1987); *Sherman v. Suburban Trust Co.,* 282 Md. 238, 384 A.2d 76 (1978); *Aravanis v. Eisenberg,* 237 Md. 242,237 Md. 242, 206 A.2d 148 (1965); *Steinwedel v. Hilbert,* 149 Md. 121, 131 A. 44 (1925).

(Emphasis added.)

As can be seen, if the Fireman's Rule is accurately stated in the excerpt just quoted from the *Southland* opinion, Officer White cannot recover from appellees, because it was Henrickson's negligence that exposed Officer White to the risk of injury. Other cases from our sister states have applied the Fireman's Rule in cases analogous to the one here at issue. In *McGhee v. State Police Department,* 184 Mich.App. 484, 459 N.W.2d 67 (1990), McGhee, a Detroit Police Officer was on duty when he heard a broadcast by the Michigan State Police, that State Troopers were engaged in a high-speed chase of a vehicle driven by one Tawaine Jackson. After Officer McGhee joined the chase, Jackson's vehicle struck McGhee's cruiser head-on. *Id.* McGhee sued the State of Michigan and two of its State Troopers for his injuries and alleged that the troopers had negligently "began and continued" the pursuit of Jackson, which resulted in his injuries. *Id.* The Michigan Court of Appeals said:

We are not persuaded by plaintiffs' argument that the rule does not apply because Officer McGhee was injured on a public street. We acknowledge that one of the Supreme Court's primary policy reasons for adopting the rule was that it would be an unreasonable burden on landowners to require them to prepare for the unanticipated arrival of police and fire fighters. *Kreski,* at 368–369, 415 N.W.2d 178. However, the Court also held that the rule should not be limited to the landowner/occupier context and that it extended to negligence which caused the need for the presence of the police officers or fire fighters. *Kreski,* at

374–377, 415 N.W.2d 178. *See also Rozenboom v. Proper*, 177 Mich.App. 49, 55, 441 N.W.2d 11 (1989). Accordingly, we hold that plaintiffs are barred by the fireman's rule from maintaining an action against defendants and affirm the summary disposition.

*Id.* at 68. *See also Berko v. Freda*, 93 N.J. 81, 459 A.2d 663 (1983) (police officer who was injured when the driver of a stolen car ran into him, could not recover, based on the Fireman's Rule, against the car owner who negligently left his keys in the car that was stolen).

Other Maryland cases, however, have summarized the Fireman's Rule in a way different from the manner the Rule was expressed in *Southland, supra.* In several instances, the Court of Appeals has expressed the Rule by using language nearly identical to that used in a treatise by Professors Prosser and Keeton. In their treatise, Prosser and Keeton on the Law of Torts, section 61, at 431 (5th ed.1984) the authors state:

> If the act of negligence that causes the injury is something other then [sic]what necessitated the presence of the safety officer, then the Fireman's Rule does not apply.... [T]he Fireman's Rule has been held only to apply when the firefighter or police officer is injured from the very danger, created by the defendant's act of negligence, that required his professional assistance and presence at the scene in the first place.

The Court of Appeals most recently paraphrased in *Tucker v. Shoemake* 354 Md. 413, 419, 731 A.2d 884 (1999), what Prosser & Keeton had said in their treatise on the Law of Torts section 61:

> Under Maryland common law, the Fireman's Rule provides that 'firemen and police officers generally cannot recover for injuries attributable to the negligence that requires their assistance.' *Flowers v. Rock Creek Terrace Ltd. Partnership*, 308 Md. 432, 447, 520 A.2d 361, 368 (1987).

A fireman or police officer may not recover if injured by the negligently created risk that was the very reason for his presence on the scene in his occupational capacity. Someone who negligently creates the need for a public safety officer will not be liable to a fireman or policeman for injuries caused by this negligence.

*Id.* at 447–48, 520 A.2d at 368. This public-policy grounded doctrine 'is based on a relationship between firemen and policemen and the public that calls on these safety officers specifically to confront certain hazards on behalf of the public.' *Id.* at 447, 520 A.2d at 368.

(Emphasis added.)

Between the wording of the Fireman's Rule as set forth in *Southland, supra,* in comparison to the language used in *Tucker, supra,* while subtle, the difference provides White with the basis for his first argument as to why the trial judge should not have granted defendants' motion for judgment. White's argument is that Henrickson's negligence does not fall within the ambit of the Fireman's Rule because that negligence did not require Officer White's assistance. Appellant words his argument as follows:

The negligence of dispatcher Henrickson was his act of erroneously dispatching the crime to be investigated by police as an "armed robbery." It is this very negligence by Henrickson which caused Officer White to inappropriately evaluate the matter and unnecessarily engage in a high-speed pursuit, and thus, is the basis of Plaintiff's claims against the State. It was the larceny that required Officer White's presence and response for the public. White was not called to investigate Henrickson's dispatch. PCO [Police Communications Officer] Henrickson's negligence in dispatching the shoplifting crime as an armed robbery and thereby, elevating the need to apprehend the suspects through a high-speed pursuit for the apparent safety of the public, had nothing to do with the larceny need [sic] for which Officer White was called to the hardware store to respond. As such, the Fireman's Rule is completely inapplicable to this matter.

While inventive, the above argument is without merit. As will be shown, in order for the Fireman's Rule to apply to police officers in Maryland, it is not necessary for the defendant to prove that the police officer was injured by the "negligence that require[d] the assistance" of the police officer. In fact, if such a requirement existed, the Fireman's Rule would seldom be applicable to police officers because, in most cases, police officers are not injured by negligent acts that require their assistance. Most police officers are injured when responding to request for aid caused by the criminal acts of third parties.

The case of *Sherman v. Suburban Trust Co.*, 282 Md. 238, 384 A.2d 76 (1978), is illustrative. Gary Sherman, a police officer, was on duty when he received a radio call that an attempt was being made to negotiate a forged check at a bank. *Id.* at 239, 384 A.2d 76. He drove to the bank where he observed that two persons were being detained by uniformed police officers in front of the drive-in window. Sherman entered the teller's cage at the bank where, for several minutes, he questioned the teller about the attempt of the suspects to pass a forged check. *Id.* During the same period he also watched the two suspects who were standing nearby. *Id.* at 240, 384 A.2d 76. While in the teller's cage, one of the bank's employees accidently dropped the forged check. Sherman stepped backwards about two or three feet and squatted down to retrieve the check. As he did so, he struck his buttocks and back on the metal scoop arm of a coin changing machine that was positioned on a stool. *Id.*

Sherman sued the bank and claimed that the coin machine had been placed by Suburban Trust in a precarious position out of his view. He also alleged that, although the bank was aware of the placement of the coin machine, it failed to give him adequate warning of its placement. *Id.* The trial court instructed the jury that a police officer "takes the property as he finds it, that is, an owner of property isn't liable to a police officer if there exists usual or ordinary and customary safety hazards.... By unusual or extraordinary hazards we mean something that is rare, uncommon, and not found in common

experience." *Id.* at 240–41, 384 A.2d 76. The jury returned a verdict in favor of the bank and the Court of Appeals affirmed, finding that Sherman could not recover because he was "injured during, and not after, the initial period of his anticipated occupational risk, and from a hazard reasonably foreseeable as a part of that risk." *Id.* at 246, 384 A.2d 76. Although *Sherman* was decided on premise liability principles, the holding by the *Sherman* Court was cited with approval by the Court of Appeals in *Flowers v. Rock Creek Terrace,* 308 Md. 432, 443, 520 A.2d 361 (1987), when it discussed the breadth of the Fireman's Rule. The *Flowers* Court said that *Sherman* was correctly decided and that the *Sherman* Court applied the proper standard of care owed to policemen and firemen. *Id.* at 443, 384 A.2d 76.[6]

In *Flowers,* the Court departed from traditional principles of land owners' premises liability when explaining the basis for the Fireman's Rule. Previously, police officers and firemen had been denied recovery (under certain circumstances) because of their status as mere licensees. *Id.* at 447, 520 A.2d

---

**6.** In *Flowers,* the Court, referring to the *Sherman* decision, said:

Sherman was injured during, and not after, the initial period of his anticipated occupational risk, and from a hazard reasonably foreseeable as a part of that risk. He was not injured by reason of any active dangerous force unleashed on the premises after he entered upon the routine performance of his duties. *Id.* at 246, 384 A.2d 76.

In sum, under the foregoing cases, the owner or occupant of the premises is not under a duty of care to keep the premises prepared and safe for a fireman. The owner or occupant of the premises must, however, abstain from willful or wanton misconduct or entrapment. This encompasses a duty to warn of hidden dangers, where there was knowledge of such danger and an opportunity to warn. Additionally, in some circumstances, when a fireman is outside of the anticipated occupational risk of fighting a fire he may be entitled to ordinary due care.

*The above-cited Maryland cases, in our opinion, applied the proper standard of care owed to firemen and policemen, and the decisions were correct.* Nevertheless, the use of a premises liability rationale would not seem to be entirely appropriate for resolving the issue in cases like this. A premises liability rationale does not encompass cases in which a fireman is injured by a fire caused by the negligence of someone other than the owner or occupier of the premises. (Emphasis added.)

361. In changing the basis for the Fireman's Rule, the Court said that the Rule was "best explained by public policy" i.e., that it is the nature of the safety officers' occupation that limits the officer's ability to recover in tort for work-related injuries. *Id.* at 447–48, 520 A.2d 361. Once again paraphrasing what Professors Keeton and Prosser had said, the *Flowers* Court stated:

> Instead of continuing to use a rationale based on the law of premises liability, we hold that, as a matter of public policy, firemen and police officers generally *cannot recover for injuries attributable to the negligence that requires their assistance.* This public policy is based on a relationship between firemen and policemen and the public that calls on these safety officers specifically to confront certain hazards on behalf of the public. *A firemen[sic] or police officer may not recover if injured by the negligently created risk that was the very reason for his presence on the scene in his occupational capacity.* Someone who negligently creates the need for a public safety officer will not be liable to a fireman or policeman for injuries caused by this negligence.

*Id.* at 447–48, 520 A.2d 361 (emphasis added).

In *Flowers*, a fireman sustained severe injuries when he fell twelve stories down an open elevator shaft while responding to a fire in an apartment building. *Id.* at 436, 520 A.2d 361. Flowers sued the building owners, the apartment's security guard company, and the elevator manufacturer alleging a general failure to properly maintain the building and elevator in a safe condition, which caused his injuries. *Id.* In evaluating the public policy considerations[7] for the Fireman's Rule, the Court stated:

---

7. The California Supreme Court, in *Calatayud v. State of California,* 18 Cal.4th 1057, 77 Cal.Rptr.2d 202, 959 P.2d 360, 363–64 (1998), summed up the most common explanation for the Rule:

> [T]he fireman's rule is based upon a public policy decision to meet the public's obligation to its officers collectively through tax-supported compensation rather than through individual tort recoveries. This spreads the costs of injuries to public officers among the whole community, making the public in essence a self-insurer against those

> With few exceptions, courts elsewhere have retained the Fireman's Rule but have based the rule on public policy considerations. Some of these courts emphasize a public policy somewhat analogous to the *assumption of risk doctrine* applied in negligence cases. Firemen are engaged by the public to encounter risks inherent in firefighting; they assume those risks, and therefore they should not recover for fire-related injuries.

*Id.* at 445, 520 A.2d 361 (emphasis added).

\* \* \*

In *Flowers*, the Court held that the claims against all three defendants were barred by the Fireman's Rule even though the plaintiff's allegation of negligence as to some of the defendants had nothing to do with the negligent acts that created the fire that brought the firefighters to the premises. Nevertheless, the *Flowers* Court said:

> Although [some of Flowers's allegations] *are not allegations of negligence in the creation of the fire that originally brought the firemen to the apartment building, an accident involving an open elevator shaft nevertheless is within the range of the anticipated risks of firefighting* ... [T]rained firemen must know of the risk that a fire may cause an

---

wrongs that any of its members may commit. (comment, *The Fireman's Rule: Defining Its Scope Using the Cost–Spreading Rationale* (1983) 71 Cal.L.Rev. 218, 235–236, fns. omitted (Comment); *See Walters[v. Sloan]*, *supra*, 20 Cal.3d [199] at pp. 205–206, 142 Cal. Rptr. 152, 571 P.2d 609 [(1977)]). "[T]he public, having secured the services of the firefighter by taxing itself, stands in the shoes of the person who hires a contractor to cure a dangerous condition. In effect, the public has purchased exoneration from the duty of care and should not have to pay twice, through taxation and through individual liability, for that service. [Citations.]" (*Neighbarger,[v. Irwin Industries, Inc.,] supra*, 8 Cal.4th [532] at pp. 542–543, 34 Cal.Rptr.2d 630, 882 P.2d 347 [(1994)]; see *Walters, supra*, 20 Cal.3d at pp. 204–206, 142 Cal.Rptr. 152, 571 P.2d 609.) Accordingly, the rule functions as a cost-spreading mechanism "allowing the public to insure against the injuries that its officers will inevitably sustain in the performance of their duties." (Comment, *supra*, at p. 235; *see Giorgi v. Pacific Gas & Elec. Co., supra*, 266 Cal.App.2d [355] at p. 360, 72 Cal.Rptr. 119 [(1968)].)

elevator to malfunction. Moreover, an open elevator shaft is not a "hidden danger" of which firemen must be warned ... An open elevator shaft concealed by the smoke of the fire is not a hidden danger in the sense of an unreasonable danger that a fireman could not anticipate upon attempting to perform his firefighting duties.

*Id.* at 451, 520 A.2d 361 (emphasis added).

As can be seen, from the excerpt just quoted, the Fireman's Rule was applied in *Flowers* in a fashion that was considerably broader than the Rule as set forth by Professors Prosser and Keeton. Therefore, contrary to appellant's contention, the mere fact that Officer White's injuries were not "attributable to the negligence that require[d][his] assistance," does not, in and of itself, mean that the Fireman's Rule is inapplicable. This latter point is illustrated by *Flood v. Attsgood Realty Co.*, 92 Md.App. 520, 608 A.2d 1297 (1992), and, more recently, by *Hart v. Shastri Narayan Swaroop, Inc.*, 385 Md. 514, 870 A.2d 157 (2005).

Baltimore City Police Officer Rounsaville Flood was on duty when he received information concerning possible narcotic activities occurring inside a building located on Abbotson Street in Baltimore. *Flood*, 92 Md.App. at 522–23, 608 A.2d 1297. When Officer Flood arrived, the building appeared to be vacant but evidence of drug usage was visible. *Id.* at 523, 608 A.2d 1297. Officer Flood entered the building as did his partner. The two went to the second floor of the building to investigate when they noticed a hole in the flooring. Officer Flood avoided that hole but, shortly thereafter, his partner called to him. As he ran to assist, he stepped on a large piece of plywood. *Id.* The plywood gave way and Officer Flood fell through the opening and was injured. *Id.* Under those circumstances, the trial judge granted summary judgment in favor of the land owner based on the Fireman's Rule. This Court affirmed, relying upon *Sherman* and *Flowers*, both *supra.* Applying the public policy reasoning enunciated in *Flowers*, we held that the risk of entering unsafe premises was one inherent in a police officer's job and therefore, under the Fireman's Rule, Officer Flood's cause of action was barred.

*Id.* at 527–28, 608 A.2d 1297. We reached that conclusion even though Flood was not injured as a result of the negligence that necessitated his assistance.

The most recent Court of Appeals case involving the Fireman's Rule is *Hart, supra.* In *Hart,* the Court reiterated that the basis for the Fireman's Rule was founded on principles of assumption of the risk and public policy. 385 Md. at 523, 870 A.2d 157. Johnathan Hart, a Lieutenant with the Baltimore County Fire Department, was injured on January 25, 2000, while fighting a fire at a motel located on Pulaski Highway in Baltimore County. *Id.* at 517, 870 A.2d 157. When Hart arrived at the motel, there was a heavy volume of smoke coming from the building. Hart immediately looked for a way to access the second floor of the motel in order to conduct a search for trapped occupants. *Id.* at 518, 870 A.2d 157. While searching for a stairway to the second floor, Hart, using a thermal imaging camera, saw what he believed to be a stairway to the second floor. *Id.* As he moved through dense smoke toward the perceived stairway, he stepped into an open space and tumbled several feet into the well of an unguarded stairwell. *Id.* Hart filed suit against the owner of the motel claiming that the land owner was negligent because he failed to place and maintain a guardrail at the top of the steps so as to protect persons from falling into the stairwell. *Id.* at 527, 870 A.2d 157.

Hart maintained that the Fireman's Rule was inapplicable. The basis for that claim was closely analogous to the ground advanced in this case by Officer White. Hart asserted that the Rule was inapplicable because the negligence of the owner of the premises was independent of the reason that had called him to the scene of the accident. *Id.* at 530, 870 A.2d 157. The *Hart* Court held that the Fireman's Rule was applicable because the firefighter's injuries were sustained as a result of the fire and smoke, which was the reason he was at the motel. In reaching this conclusion, the Court analyzed the cases of *Tucker v. Shoemake,* 354 Md. 413, 731 A.2d 884 (1999), and *Rivas v. Oxon Hill Joint Venture,* 130 Md.App. 101, 744 A.2d 1076 (2000), saying:

Hart claims that *Tucker* applies because, in both the case *sub judice* and in *Tucker*, "[b]oth men stepped into a dangerous opening maintained by the owner of the premises and were injured. Both dangerous openings were completely independent of the reason that each was called to the scene. Both dangerous conditions were hazards that could not reasonably be anticipated as part of each man's occupation." This contention is wrong. *The basis for our holding the Fireman's Rule inapplicable in Tucker was that the police officer's injury was "independent and not related" to the purposes for which he was* at the trailer park. In other words, the officer's fall through the manhole cover was not directly caused in any way by the domestic dispute allegedly occurring in the trailer home he was approaching. In Hart's case, however, the fire, with its resultant smoke, *was the reason* that he was unable to perceive the open stairwell as he approached the motel in furtherance of his firefighting duties.

Hart's reliance on the Court of Special Appeals' decision in *Rivas v. Oxon Hill Joint Venture*, 130 Md.App. 101, 744 A.2d 1076, *cert. denied*, 358 Md. 610, 751 A.2d 471 (2000), is also unavailing. That case involved a situation where a deputy sheriff slipped and fell on a patch of ice as he was en route to serving a subpoena to a witness in a landlord-tenant case. Recognizing our holding in *Tucker*, the intermediate appellate court found that the police officer's personal injury action against the owner of the apartment complex was not barred by the Fireman's Rule. As the Court of Special Appeals stated:

> In the case *sub judice*, as in *Tucker*, the Fireman's Rule did not apply. To be sure, as a deputy sheriff for Prince George's County, Rivas was a law enforcement officer ... and his duties as such required him to confront certain risks on behalf of the public. *Under the Fireman's Rule, he was deemed to have accepted the risks inherent in those duties by accepting the position of deputy sheriff and the compensation of his office.* The purpose for Riva's visit to the Oxon Hill Apartments was to perform

the duty of serving a subpoena. The negligence that allegedly caused his injury, however, was unrelated to the situation that required his services. Rivas was injured on account of an allegedly defective condition of the common area parking lot of the apartment complex, across which he walked on his approach to the apartment unit in which he intended to serve the subpoena. *He was not in the process of serving the subpoena when he was injured and his injuries were not brought about by the activity of subpoena serving.* Because Rivas's injuries did not arise out of the very occasion for his employment, i.e., the serving of the subpoena, the Fireman's Rule was inapplicable.

*Rivas,* 130 Md.App. at 108–09, 744 A.2d at 1080 (citation omitted) (emphasis added).

Thus, in *Rivas,* the intermediate appellate court allegedly followed our ruling in *Tucker,* allowing for a suit in tort to proceed notwithstanding the Fireman's Rule where the police officer sustained injuries *independent and not related* to his professional purpose for being at the apartment complex. As we stated, Hart's injury occurred during the time when he was performing his job duties as a firefighter and occurred as a result of the fire and smoke. Therefore, *Rivas,* like *Tucker,* is dissimilar to the case *sub judice.* Neither case is contrary to our holding here. *Id.* at 530–31, [870 A.2d 157].

(Emphasis added.)

Later in the *Hart* opinion, the Court concluded:

Hart was present at the scene of the fire in order to fulfill his duty to the public as a firefighter. It was during the performance of his inherently dangerous occupation that he was injured after falling into a stairwell that he could not see on account of the smoke. This is the kind of injury that the Fireman's Rule is meant to bar.

*Id.* at 534, 870 A.2d 157.

It is clear from *Hart* that in order for the Fireman's Rule to be applicable, it is no longer necessary for the

defendant to prove that the firefighter or police officer was "injured by the negligently created risks that was the very reason for his presence on the scene in his occupational capacity." As can be seen in *Hart*, the firefighter was barred from recovery even though the alleged "negligence" [failure to put up a guardrail] was neither the reason for the firefighter's presence on the scene in his occupational capacity nor were his injuries "attributable to the negligence that required the assistance of the firefighter."

Based on *Flowers, Hart,* and *Flood*, all *supra*, it is presently accurate to express the Fireman's Rule, as follows:

Police officers and firefighters are precluded from recovery for acts of negligence that injure them so long as the officer or firefighter is injured while performing an obligation of his occupation and so long as there is a causal relationship between the manner of performing his job and the manner of injury.

*See* Margaret Ward, *Clearing the Smoke Around the Fireman's Rule*, 34 Md. Bar Journal 48, 52 (2001).

Officer White was injured while performing his duty as a police officer. There was an obvious causal relationship between the manner of performing his job and the manner of his injury. We therefore hold that the lawsuit brought by Officer White in the case *sub judice* fits squarely within the Fireman's Rule as it has evolved in this State.

There are three exceptions to the Fireman's Rule that have been recognized by the Maryland courts. One of those exceptions is that defendants are not protected by the Fireman's Rule when the injury is caused by a "failure to warn the [firemen or police officers] of pre-existing hidden dangers where there was knowledge of the danger and an opportunity to warn." *Flowers*, 308 Md. at 448, 520 A.2d 361. Second, the Fireman's Rule does not bar a claim by a policeman or fireman against a defendant who intentionally causes

them injury.[8] *State Farm v. Hill,* 139 Md.App. 308, 328, 775 A.2d 476 (2001). Third, the Fireman's Rule does not bar claims based on the defendant's negligent act or acts that "occur subsequent to the safety officer's arrival on the scene, which are outside of his anticipated occupational hazzard." *Flowers,* 308 Md. at 448, 520 A.2d 361.

In this case, appellant contends that two of the just mentioned exceptions to the Fireman's Rule are applicable. First he contends:

> [T]he dispatcher's negligence was clearly a pre-existing hidden danger of which Henrickson had the opportunity to correct during the ten (10) minutes of pursuit prior to the accident. As such, the facts warrant application of this well-recognized exception to the Fireman's Rule.

This argument has no merit because the exception, by its very terms, applies only if there is a danger *about which the defendant has knowledge. Flowers,* 308 Md. at 448, 520 A.2d 361. Therefore, even if we were to assume, *arguendo,* that the dangers of a high-speed chase were somehow "hidden," it would make no difference because there was no evidence that at any time here relevant, the dispatcher knew that the information he gave to Officer White was incorrect.

Appellant also asserts that the Fireman's Rule does not apply if the defendant's act of negligence "was not reasonably foreseeable" by the police officer or firefighter. Even if we were to assume, *arguendo,* that there exists such an exception, the exception that appellant espouses is here inapplicable. Police officers who work in the "milieu of criminal activity must make decisions that are fraught with uncertainty and danger." *See Ashburn v. Anne Arundel County,* 306 Md. 617, 629, 510 A.2d 1078 (1986). One of those uncertainties is that the information conveyed by the dispatcher may be incorrect. *See Muthukumarana v. Montgomery County,* 370 Md. 447, 491, 805 A.2d 372 (2002). In this case, it was reasonably

---

**8.** The *Flowers* Court, made it clear that the Fireman's Rule "does not apply to suits against arsonist or those engaged in similar misconduct." 308 Md. at 448–49, 520 A.2d 361.

foreseeable that a police dispatcher, operating in a high pressure situation such as the one that was presented when Main reported the crime, might make an error in describing what crime the suspects had committed.

Lastly, appellant contends that Henrickson's negligence was "analogous" to a situation where a police officer suffers harm as a result of an intentional act. After correctly asserting that the Fireman's Rule does not bar a lawsuit against a defendant who intentionally causes the police officer harm, appellant contends that "the grossly negligent nature of" Henrickson's error "renders his act comparably equivalent" to an intentional act. We reject that argument out of hand. Henrickson's actions were in no way either equivalent to or analogous to those of a defendant who intentionally causes harm.

For the reasons stated above, we hold that the trial judge was correct when, based on the Fireman's Rule, she granted judgment in favor of the defendants.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**